**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 4 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

DAVID MEYERS,

       Defendant-Appellant.

No. 98-8086

Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 95-CR-58-1)

Michael Reese, Wiederspahn, Liepas & Reese, P.C., Cheyenne, Wyoming, for
Defendant-Appellant.

David A. Kubichek, Assistant United States Attorney, Casper, Wyoming (David
D. Freudenthal, United States Attorney, Casper, Wyoming, on the brief), for
Plaintiff/Appellee.

Before **LUCERO**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

David Meyers appeals the revocation of his supervised release and resulting imprisonment on numerous grounds. The government contends that Meyers' completion of his term of imprisonment resulting from the revocation order renders this appeal moot. This court concludes that Meyers' appeal is indeed moot, thus depriving us of jurisdiction to address the merits of his claims.

## II. BACKGROUND

On October 5, 1995, in the district court for the District of Wyoming, Meyers was convicted of conspiracy to possess with intent to distribute and distribution of marijuana, as well as aiding and abetting possession with intent to distribute marijuana. He received a sentence of thirty-three months imprisonment followed by three years of supervised release. This court subsequently affirmed his conviction and sentence. *See United States v. Meyers*, 95 F.3d 1475, 1489 (10th Cir. 1996). Meyers was released from prison on July 28, 1997 under specific terms of supervised release, which included his submission to urinalysis for narcotics.

Three months after Meyers' release from prison, a counselor at Border Area Mental Health Service, Inc. of New Mexico (BAMH) collected from Meyers a urine sample, which tested positive for THC, the active ingredient in marijuana.

Meyers later informed Probation Officer James Barela that he would no longer cooperate with BAMH. As a result of these occurrences, on July 29, 1998, Probation Officer John Olive petitioned the district court for the District of Wyoming for revocation of Meyers' supervised release. The petition alleged violations of the following three conditions of Meyers' supervised release: (1) refraining from the purchase, possession, use, distribution or administration of narcotics, controlled substances, or related paraphernalia except as prescribed by a physician; (2) refraining from the use or possession of controlled substances unless prescribed by a medical practitioner licensed in the United States; and (3) participating in drug and alcohol treatment as directed by the U.S. Probation Office.

Identity and detention hearings were then held in the district court for the District of New Mexico in early August of 1998. The district court detained Meyers for commitment to the District of Wyoming. After Meyers was transported to Wyoming, on September 25, 1998 the district court for the District of Wyoming held a joint preliminary and revocation hearing, at which Meyers represented himself, though appointed counsel was present. The district court found the petition true, revoked Meyers' release, and sentenced him to nine months imprisonment.

Meyers then appealed the district court's revocation order, asserting the following five grounds for reversal:[1] (1) the district court erred by allowing Meyers to represent himself at the revocation hearing without determining whether his waiver of counsel was knowing and intelligent; (2) the district court erred by failing to provide a prompt preliminary hearing; (3) the district court erred by denying Meyers an opportunity to examine two adverse witnesses at the revocation hearing; (4) there was insufficient evidence presented at the revocation hearing to support the district court's finding that Meyers violated terms of his release; and (5) the government waived its right to revoke Meyers' release because it unreasonably delayed seeking revocation after the alleged violation. In May of 1999, however, while this appeal was pending, Meyers completed the term of imprisonment imposed as a result of the revocation. He is now out of prison, under no further terms of probation or supervised release.

## III. DISCUSSION

Before a court addresses the merits of an appeal, it must first determine whether in fact it has jurisdiction over that appeal. Article III of the United

---

[1] In addition to these errors alleged in Meyers' counsel's brief, Meyers himself raised several more arguments in a *pro se* brief which he also filed. This court construed that brief as a motion for permission to file a supplemental brief. In light of our conclusion that this appeal is moot, we deny Meyers' motion to file a supplemental brief.

States Constitution only extends federal judicial power to cases or controversies. U.S. Const. Art. III, § 2, cl. 1. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). An appellant seeking relief "must have suffered, or be threatened with, an actual injury traceable to the [appellee] and likely to be redressed by a favorable judicial decision [by the appeals court]." *Id.* Thus, when the injury for which an appellant seeks judicial relief disappears or is resolved extrajudicially prior to the appellate court's decision, the appellant can no longer satisfy the Article III case or controversy jurisdictional requirement and the appeal is moot. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987).

When an incarcerated criminal defendant appeals his conviction, the ongoing incarceration constitutes an injury from which the defendant seeks relief in satisfaction of Article III. *See Spencer v. Kemna*, 118 S. Ct. 978, 983 (1998). If, however, that same defendant completes his sentence prior to the appellate court decision, the court must determine whether sufficient collateral consequences flow from the underlying judgment and the completed sentence to save the appeal from mootness. *See id.* In *Spencer*, the Supreme Court acknowledged, though with some level of discomfort, its prior jurisprudence establishing a presumption of sufficient collateral consequences when a defendant

who has already served his sentence appeals the propriety of his initial conviction. *See id.* at 983-85.  Among other consequences resulting from a criminal conviction, the Court has recognized a host of civil disabilities imposed by law upon convicts.  *See, e.g., Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968) (holding that the defendant's inability to engage in certain businesses, serve in particular offices, vote, and serve as a juror due to his conviction defeated the mootness challenge to his appeal).  The reality of these substantial disabilities eventually led the Court to simply presume that sufficient collateral consequences exist in cases where released defendants appeal their direct convictions.  *See Sibron v. New York*, 392 U.S. 40, 55 (1968).

In *Spencer*, however, the Court declined to extend this presumption of collateral consequences to challenges of parole termination.  *See Spencer*, 118 S. Ct. at 986.  Building upon its decision in *Lane v. Williams*, 455 U.S. 624 (1982), the Court reasoned that those collateral consequences from which the presumption derived in initial conviction appeals do not similarly flow from a parole revocation order.  *See Spencer*, 118 S. Ct. at 985-86.  Thus, the Court held that when a defendant challenges a parole revocation but has completed the sentence imposed upon revocation, the defendant bears the burden of demonstrating the existence of actual collateral consequences resulting from the revocation.  *See id.* at 986.

The *Spencer* court went on to determine that the consequences which the defendant attributed to his parole revocation were insufficient to satisfy Article III. *See id.* at 986-87. One such asserted consequence was the possibility that the revocation order could trigger an increase in the defendant's sentence in some future sentencing proceeding. *See id.* at 986. In rejecting this possible consequence as too speculative to defeat the government's mootness challenge, the Court stated: "A similar claim was likewise considered and rejected in *Lane*, because it was contingent upon respondents' violating the law, being caught and convicted. 'Respondents themselves are able – and indeed required by law – to prevent such a possibility from occurring.'" *Id.* at 987 (quoting *Lane*, 455 U.S. at 633 n.13).

Less than a year after *Spencer*, this court decided *United States v. Dominguez-Carmona*, 166 F.3d 1052 (10th Cir.), *cert. denied*, 120 S. Ct. 87 (1999) and *United States v. Soto-Holguin*, 163 F.3d 1217 (10th Cir. 1999). In both cases, the government appealed the length of the sentence imposed upon the defendants' initial convictions. *See Dominguez-Carmona*, 166 F.3d at 1055; *Soto-Holguin*, 163 F.3d at 1219. The defendants in both cases had completed their sentences and been deported to Mexico, and thus argued that the government's appeals were moot. *See Dominguez-Carmona*, 166 F.3d at 1055; *Soto-Holguin*, 163 F.3d at 1219. This court, however, concluded that the

completion of the defendants' sentences did not render the government's appeals moot because the length of the sentence imposed could impact the defendants' criminal history score under the United States Sentencing Guidelines ("U.S.S.G." or "the guidelines") in future federal sentencing proceedings, a collateral consequence sufficient to defeat mootness. *See Dominguez-Carmona*, 166 F.3d at 1056; *Soto-Holguin*, 163 F.3d at 1220; *see also United States v. Reider*, 103 F.3d 99, 101 (10th Cir. 1996) (a pre-*Spencer* opinion holding that a defendant's challenge to a revocation of his supervised release did not become moot upon his release from prison because, *inter alia*, the revocation will affect any other future sentencing); *United States v. Chavez-Palacios*, 30 F.3d 1290, 1293 (10th Cir. 1994) (a pre-*Spencer* case holding that a defendant's challenge to the length of his incarceration was not moot despite his release because, *inter alia*, the length of imprisonment would impact his criminal history score in future sentencing proceedings). *But see Dominguez-Carmona*, 166 F.3d at 1059 (Lucero, J., concurring) (noting that under *Spencer* "the collateral consequence of additional criminal history points . . . is too speculative to overcome [mootness].")

The only collateral consequence which Meyers advances to counter the government's mootness claim is the possibility that the sentence he received for the supervised release violation could increase his criminal history score in future sentencing proceedings. Under the guidelines, two points are added to a

defendant's criminal history calculation if the defendant committed the federal crime at issue within two years of release from imprisonment on a sentence of at least sixty days. *See* U.S.S.G. § 4A1.1(e). In addition, revocation of supervised release may affect the date of release for purposes of section 4A1.1.(e). *See id.* § 4A1.2(k)(2)(A). Therefore, due to the revocation and resulting sentence imposed upon Meyers, his criminal history score will increase by two points should he commit a federal crime within two years of May of 1999 when he completed his revocation sentence; absent the revocation, however, his criminal history calculation would increase by two points only if he commits a federal crime within two years of July 29, 1997, the date of his release from the initial sentence. In short, the revocation of Meyers' supervised release status and resulting sentence lengthened the amount of time in which he is subject to a potential additional penalty imposed by the guidelines.

Although *Spencer* squarely rejected as too speculative the precise argument for collateral consequences now made by Meyers, the two relevant cases from this court which postdated *Spencer* – *Dominguez-Carmona* and *Soto-Holguin* – are premised on the very reasoning of Meyers' argument. *See Spencer*, 118 S. Ct. at 986-87; *Dominguez-Carmona*, 166 F.3d at 1056; *Soto-Holguin*, 163 F.3d at 1220. Under the doctrine of *stare decisis*, this panel cannot overturn the decision of another panel of this court. *See United States v. Nichols*, 169 F.3d 1255, 1261

(10th Cir. 1999). "We are bound by the precedent of prior panels absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court." *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993). The precedent of prior panels which this court must follow includes not only the very narrow holdings of those prior cases, but also the reasoning underlying those holdings, particularly when such reasoning articulates a point of law. *See Roque-Rodriguez v. Lema Moya*, 926 F.2d 103, 108 (1st Cir. 1991) ("[T]he reasoning of [a prior First Circuit case] compels a similar outcome in the case at bar. And, we are not at liberty to reject that reasoning."); *Equal Employment Opportunity Comm'n v. Atlanta Gas Light Co.*, 751 F.2d 1188, 1191 (11th Cir. 1985) ("For us to adhere to the [Supreme] Court's holding but not its reasoning would violate the rules of precedent which control our decision making processes."); *Federal Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488, 1492 (10th Cir. 1987) (defining *stare decisis* as "either . . . a decision on a legal point or . . . precedent in which a court has decided identical factual issues"). This court's determination in *Dominguez-Carmona* and *Soto-Holguin* that the appeals were not moot because the challenged sentences could affect future sentencing proceedings for those defendants thus constitutes a point of law which *stare decisis* dictates this panel must follow.

The government, however, suggests a means by which this panel can distinguish *Dominguez-Carmona* and *Soto-Holguin* from the instant case and thus

still conclude, consistent with those cases, that Meyers' appeal is moot. Specifically, the government asserts that the presumption of collateral consequences established by the Supreme Court attaches to appeals of sentences imposed following an initial conviction, the posture of both *Dominguez-Carmona* and *Soto-Holguin*, but not to challenges of a supervised release revocation and resulting sentence, as in the instant appeal. Thus, the government argues the applicability of this presumption to *Dominguez-Carmona* and *Soto-Holguin* but not to Meyers' appeal moves this case out from under the control of those two cases and squarely within the precedent of *Spencer*.

Although *Dominguez-Carmona* and *Soto-Holguin* do differ factually and procedurally from Meyers' appeal, the differences do not present a principled means of distinction. First, whether the presumption of collateral consequences does in fact still apply when a party challenges the sentence imposed following the initial conviction, but not the underlying conviction itself, remains an open question in light of *Spencer*. *See United States v. Mercurris*, 192 F.3d 290, 293-94 (2d Cir. 1999) (declining to adopt the presumption in a defendant's challenge to the length of his sentence); *United States v. Palomba*, 182 F.3d 1121, 1123 n.3 (9th Cir. 1999) (same). *But see Pollard v. United States*, 352 U.S. 354, 358 (1957) ("The possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify our dealing with the merits" of a defendant's

-11-

challenge to the validity of his sentence). Indeed, both *Dominguez-Carmona* and *Soto-Holguin* involved challenges not to the underlying convictions but only to the sentences thereafter imposed. *Cf. infra* note 3 (noting that the collateral consequences doctrine is not even implicated when the government challenges the length of the sentence). Moreover, even if the presumption were applicable in the context of those two cases, this court did not in fact utilize the presumption to reach its decision in either case. Instead, the court unequivocally and broadly stated a point of law applicable generally to the question of mootness: "Because the length of the sentence imposed . . . will affect the computation of criminal history points for any future federal sentences which Defendants may receive, collateral consequences exist and the appeals are not moot." *Dominguez-Carmona*, 166 F.3d at 1056; *see also Soto-Holguin*, 163 F.3d at 1220. As a consequence, there exists no principled means to avoid application of the broad point of law announced in *Dominguez-Carmona* and *Soto-Holguin*.

One panel, however, may overrule a point of law established by a prior panel after obtaining authorization from all active judges on the court. *See, e.g., Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128 n.2 (10th Cir. 1991). Because this court now deems the above-mentioned point of law articulated in *Dominguez-Carmona* and *Soto-Holguin* to be directly at odds with the Supreme Court's decisions in both *Spencer* and *Lane*, which would otherwise control the instant

-12-

case, [2] we overrule that point of law. [3] Thus, this court holds that when a

[2] The only distinction between *Spencer* and the instant case is that *Spencer* involved a challenge to a revocation of parole, whereas Meyers appeals the revocation of supervised release. This court can discern no relevant differences between parole and supervised release which would militate against the applicability of *Spencer*. *See United States v. Probber*, 170 F.3d 345, 347-49 (2d Cir. 1999) (applying *Spencer* in a challenge to the revocation of supervised release); *United States v. Engelhorn*, 122 F.3d 508, 513 (8th Cir. 1997) (noting that Congress abolished the federal parole system and replaced it with a regime of supervised release); *United States v. Pierce*, 75 F.3d 173, 177 (4th Cir. 1996) (discussing similarities between federal supervised release and North Carolina's parole system).

[3] This opinion has been circulated to all active members of this court, and it is their unanimous decision to overturn the following point of law articulated in *Dominguez-Carmona* and *Soto-Holguin*: the potential impact of challenged sentences on future sentencing proceedings constitutes a sufficient collateral consequence to render a controversy live even though the defendant involved has completed the sentence imposed. Despite overruling this point of law, this panel nonetheless does not question the ultimate outcome reached in both *Dominguez-Carmona* and *Soto-Holguin* on the issue of whether the defendants' completion of their sentences mooted the government's appeals. In other words, those two opinions properly concluded that the defendants' completion of their sentences did not render moot the government's challenge to the length of the imposed sentences. When the government is the party appealing the length of an imposed sentence as improperly short, the defendant's completion of that sentence does not moot the appeal because the government still alleges a remediable injury: the trial court's failure to impose the appropriate sentence pursuant to statute or the sentencing guidelines. In such an appeal, the government's asserted need for a longer sentence than that imposed can be remedied only by appeal. *See* 18 U.S.C. § 3742(b); *see also United States v. DiFrancesco*, 449 U.S. 117, 136 (1980) (stating that a criminal defendant "is charged with knowledge of the statute [granting the prosecution the right to appeal a sentence] . . . and [thus] has no expectation of finality in his sentence until the [government's] appeal is concluded or the time to appeal has expired."). *Cf. Pennsylvania v. Mimms*, 434 U.S. 106, 109 n.3 (1977) (concluding that the state's inability to impose burdens on the defendant due to the reversal of his conviction in state court sufficed to render live the state's appeal to the Supreme Court, even though by that point the defendant had served his entire sentence). Indeed, an appeal in this context does

defendant appeals the revocation of his supervised release and resulting imprisonment and has completed that term of imprisonment, the potential impact of the revocation order and sentence on possible later sentencing proceedings does not constitute a sufficient collateral consequence to defeat mootness.

Indeed, such a holding brings this circuit in line not only with Supreme Court precedent but with every other circuit but one that has considered the issue since *Spencer*.[4] *See United States v. Probber*, 170 F.3d 345, 347-49 (2d Cir. 1999) (holding that in an appeal of a revocation of supervised release in which the defendant had completed his term of imprisonment, the possible effect of the findings underlying the revocation order on future sentencing was too speculative to save the appeal from mootness); *Diaz v. Duckworth*, 143 F.3d 345, 346-47 (7th Cir. 1998) (holding that the release from imprisonment and the deportation of a

not even implicate the collateral consequences doctrine, because the direct consequences of an allegedly too brief sentence persist.

The defendants in *Dominguez-Carmona* and *Soto-Holguin* raised the further question of whether their deportation mooted the government's appeal. *See Dominguez-Carmona*, 166 F.3d at 1056; *Soto-Holguin*, 163 F.3d at 1219. Because the instant case presents no such deportation issue, this panel need not address the treatment of that issue in *Dominguez-Carmona* and *Soto-Holguin*.

[4] In an unpublished order and judgment issued by a panel of this court after *Spencer*, *Dominguez-Carmona*, and *Soto-Holguin*, that panel followed the rule of law established in *Spencer*. *See Strachan v. Army Clemency & Parole Bd.*, No. 99-3024, 1999 WL 668835, at *1 (10th Cir., Aug. 27, 1999) (unpublished disposition) (concluding that habeas petitioner's challenge to the sentence imposed upon parole revocation became moot when he was released from prison and that the possible affect of the length of his sentence on later sentencing did not save the appeal from mootness).

habeas petitioner challenging a prison disciplinary proceeding rendered his appeal moot, despite the possibility that the disciplinary action could affect future sentencing); *Palomba*, 182 F.3d at 1123 (9th Cir. 1999) (concluding that in a defendant's challenge of the sentence he received, but not the conviction itself, his release from prison rendered the appeal moot despite the potential impact of the sentence imposed on future sentencing); *see also United States v. Clark*, 193 F.3d 845, 847-48 (5th Cir. 1999) (holding moot a challenge to extended supervised release when the supervised release period had ended because the potential effect of the appeal on some later lawsuit did not suffice as a collateral consequence under *Spencer*); *Beachem v. Schriro*, 141 F.3d 1292, 1294 (8th Cir. 1998) (concluding that in a habeas challenge to the imposition of parole, when the state removed its detainer over the petitioner, the possible revocation of parole did not suffice to defeat the state's mootness claim). *But see United States v. Cottman*, 142 F.3d 160, 164-65 (3d Cir. 1998) (an opinion issued less than two months after *Spencer* which fails to reference *Spencer*, holding a defendant's challenge to a sentence was not moot though he had completed that sentence in part because it could impact future sentencing). Both the Second and Ninth Circuits have specifically indicated that *Spencer* overruled their prior case law holding that a challenge to a completed sentence remains live if there exists any possibility that the appeal could impact future sentencing. *See Mercurris*, 192

-15-

F.3d at 294 (concluding that cases such as *United States v. Kassar*, 47 F.3d 562, 565 (2d Cir. 1995) "are no longer controlling" in light of *Spencer*); *Palomba*, 182 F.3d at 1123 (stating that due to *Spencer*, "[p]rior Ninth Circuit cases reviewing completed sentences because of collateral consequences in future sentencing . . . are thus no longer good law." (citation omitted))  Because Meyers has asserted no other collateral consequences to defeat the government's mootness challenge and because he bears the burden of establishing such consequences, this court concludes that his appeal is moot.

IV.  CONCLUSION

Meyers has completed the term of imprisonment resulting from the revocation of his supervised release status and has failed to demonstrate sufficient collateral consequences flowing from the revocation and resulting sentence to defeat the government's mootness claim.  This court therefore lacks jurisdiction to entertain the merits of his appeal, which is hereby **DISMISSED**.