# United States Court of Appeals
## For the First Circuit

No. 03-1348
No. 03-2272

UNITED STATES OF AMERICA,

Appellee,

v.

LOUIS DUCLOS, a/k/a LEWIS G. DUCLOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, U.S. District Judge]

Before

Boudin, Chief Judge,
Campbell, Senior Circuit Judge,
and Lynch, Circuit Judge.

Paul Glickman with whom Glickman Turley LLP was on brief for appellant.
Peter E. Papps, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief for appellee.

September 8, 2004

**CAMPBELL**, **Senior Circuit Judge**.  This appeal is from the district court's judgment revoking appellant's term of supervised release and imprisoning him for thirteen months in addition to a previously served sentence of incarceration.  Appellant also appeals from the district court's denial of bail pending this appeal.  We hold that as appellant has now completed serving the complained-of additional term of imprisonment, both appeals are moot.

## I.  Background

In 1999, appellant, Louis Duclos, was indicted on two charges:  filing a false statement with the United States Postal Service, in violation of 18 U.S.C. § 1001 (Supp. IV 1998), and obstructing correspondence, in violation of 18 U.S.C. § 1702 (1994).  After a trial in the United States District Court for the District of New Hampshire, a jury found Duclos guilty on both counts.  The district court sentenced him to fourteen months imprisonment, three years of supervised release, and a $200 fine.  Duclos appealed, and this court affirmed the conviction and sentence.  United States v. Duclos, 214 F.3d 27, 34 (1st Cir. 2000).

Duclos fully served his original term of imprisonment, and his supervised release term of three years began to run in April of 2000.  Duclos' supervised release was plagued with

difficulties. He tested positive for marijuana metabolites[1]; he was arrested for assault[2]; and he was arrested and charged with driving while intoxicated. Further, Duclos had contact with the Milford Police Department that he did not report to Probation.

Consequently, Probation filed on January 13, 2001 a recommendation that Duclos' supervised release term be revoked, alleging numerous violations of the conditions of his supervision. On February 27, 2003, after a hearing, the district court found by a preponderance of the evidence that Duclos was guilty of several violations: failing to notify a probation officer within seventy-two hours of his being arrested or questioned (violation numbers one and seven); failing to submit a truthful written report for the month of September, 2001 in violation of 18 U.S.C. § 1001 (violation number two); and failing to refrain from the use of alcohol (violation number six). Accordingly, the district court revoked the term of supervised release imposed in Duclos' original

---

[1]Duclos adamantly denied that he had used marijuana and blamed the result on eating poppy seed bagels that week. The United States Probation Office ("Probation") requested to the district court that no action be taken at that time, and the district court agreed.

[2]The charge, Simple Assault-Domestic Violence, was later dismissed because the victim recanted her statement and absolved Duclos of any wrongdoing. Again, Probation recommended that no action be taken at that time, and the district court agreed.

sentence and imposed upon Duclos in place thereof a thirteen-month term of imprisonment.[3]

On March 11, 2003, Duclos appealed from that judgment. On April 21, 2003, Duclos filed pro se a motion for a stay of the supervised release revocation and imprisonment. On May 2, 2003, this court, construing the motion as for bail pending appeal, denied it without prejudice to refiling in the event that the district court were to deny an application for release. Duclos then moved unsuccessfully in the district court for bail pending appeal.

Duclos filed a bail appeal, which we consolidated with the pending appeal.[4] On October 1, 2003, present defense counsel was appointed to handle both appeals. Duclos' counsel filed a brief that addressed only the issue of whether there was sufficient evidence presented in the revocation proceedings to find Duclos guilty of violation number two: it did not address the bail appeal.[5] On January 27, 2004, the government filed a brief

---

[3]The district court imposed no additional term of supervised release, thus leaving Duclos subject to no further supervised release commitment.

[4]Over eight months after filing his appeal and approximately two months before his release and the March 1st, 2004 oral argument, Duclos moved for expedited appeal. His motion was denied for untimeliness. Given the mootness factor, this court might well have allowed a motion for expedited appeal had it been filed at the time of the appeal or shortly thereafter.

[5]Duclos requested leave to file pro se a memorandum of clarification and a supplemental brief. We granted leave and have

-4-

addressing both the revocation and bail issues.  Duclos, through counsel, addressed the bail appeal in a reply brief filed on February 4, 2004.

On February 19, 2004, Duclos finished serving the term of imprisonment imposed in the judgment revoking his supervised release.  He was freed, therefore, approximately two weeks before appellate oral argument.[6]  During argument, Duclos' counsel contended that Duclos' appeal was not mooted by his release, arguing that serious collateral consequences flowed from the allegedly wrongful revocation of his supervised release which this court could and should remedy by overturning the district court's judgment.  Shortly after oral argument, Duclos filed pro se an Emergency Motion for Consideration, in which he noted additional collateral consequences militating against mootness that were not mentioned during oral argument.[7]  On March 12, 2004, we entered an order in which we stated that we would take Duclos' pro se motion

---

considered the memorandum and brief, in which he preserved the issue of bail pending appeal.

[6]According to the district court's revocation judgment, Duclos was to surrender for sentence on March 14, 2003.  No explanation has been provided for Duclos' release approximately two months before the expiration of thirteen months, but neither party suggests that Duclos has any time remaining to serve.

[7]Insofar as the Emergency Motion for Consideration requests that this court consider the arguments set forth therein, we allow the motion.  As discussed infra, however, we find these arguments to be without merit.

under advisement and would rule on it when we issued an opinion on the merits of the pending appeals.

## II. Discussion

The threshold, and as it appears, determinative, issue here is whether Duclos' completion of his sentence moots his appeals. Garcia-Velazquez v. Frito-Lay Snacks Caribbean, 358 F.3d 6, 8 (1st Cir. 2004) ("In every case, we are required to satisfy ourselves of jurisdiction.") (citation omitted). We hold that it does.

Article III, Section 2 of the United States Constitution limits our subject-matter jurisdiction to live cases or controversies. See Spencer v. Kemna, 523 U.S. 1, 7 (1998). This "case-or-controversy requirement" means that parties "'must continue to have a personal stake in the outcome'" through all the stages of judicial proceedings, trial and appellate. See id. (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990)). An appellant must have "suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis, 494 U.S. at 477.

In his bail appeal, Duclos requested that he be released from custody on bail during the pendency of his appeal. As Duclos has been released, the relief requested in his bail appeal has become extraneous. Accordingly, his bail appeal no longer

satisfies the case-or-controversy requirement, having become altogether moot. We now turn to his lead appeal.

In his lead appeal, Duclos challenges the district court's determination that he failed to submit to Probation a truthful written report for the month of September, 2001 in violation of 18 U.S.C. § 1001 (violation number two). This, among others, was the basis for the revocation of his supervised release and the imposition of additional incarceration. A defendant's ongoing incarceration, parole, or supervised release can satisfy the case-or-controversy requirement. Spencer, 523 U.S. at 7-8; United States v. Molak, 276 F.3d 45, 48 (1st Cir. 2002) ("Just as a parolee would have a continuing stake in the outcome of a challenge to the underlying conviction and sentence because of the restriction imposed by the terms of the parole, so too a convicted defendant who is under an ongoing sentence of supervised release has a continuing stake in the outcome of a challenge to the underlying conviction and sentence.") (citations omitted). When a defendant has completed his or her sentence, however, the relevant inquiry is whether the defendant still suffers "collateral consequences," which are considered redressable injuries satisfying the case-or-controversy requirement. Spencer, 523 U.S. at 7-8.

The Supreme Court has long held that when a defendant appeals from a criminal conviction, courts are to presume the existence of collateral consequences. Sibron v. New York, 392 U.S.

40, 55 (1968). In <u>Spencer</u>, however, the Court declined to extend this presumption to an appeal taken from the revocation of parole. 523 U.S. at 13. Since <u>Spencer</u>, courts, including this one, have applied <u>Spencer</u>'s holding to appeals from revocations of supervised release. <u>United States</u> v. <u>Mazzillo</u>, 373 F.3d 181, 182-83 (1st Cir. 2004) (per curiam) ("An appeal from an order revoking supervised release is ordinarily moot if the sentence is completed before the appeal is decided.") (citations omitted); <u>United States</u> v. <u>Kissinger</u>, 309 F.3d 179, 181-82 (3d Cir. 2002); <u>United States</u> v. <u>Meyers</u>, 200 F.3d 715, 722-23 (10th Cir. 2000); <u>United States</u> v. <u>Clark</u>, 193 F.3d 845, 847-48 (5th Cir. 1999) (per curiam); <u>United States</u> v. <u>Probber</u>, 170 F.3d 345, 347-49 (2d Cir. 1999). As the current appeal is not from Duclos' underlying conviction but only from the revocation of his supervised release term and the substitution therefor of a term of imprisonment, we do not presume the existence of collateral consequences. <u>See</u> <u>Mazzillo</u>, 373 F.3d at 182-83. Rather, we require appellant to show the existence of actual consequences of sufficient substance to establish an ongoing case or controversy.

Duclos contends that the revocation of his supervised release and his subsequent imprisonment resulted in specific injuries that constitute actual collateral consequences. First, he argues that the harm to his reputation caused by the revocation

constitutes a cognizable collateral consequence. We disagree.

_Spencer_ rejected an identical argument:

> The dissent asserts that "a finding that an individual has committed a serious felony" renders the "interest in vindicating . . . reputation . . . constitutionally sufficient" to avoid mootness. We have obviously not regarded it as sufficient in the past -- even when the finding was not that of a parole board, but the much more solemn condemnation of a full-dress criminal conviction. For that would have rendered entirely unnecessary the inquiry into concrete collateral consequences of conviction in many of our cases and unnecessary as well (at least as to felony convictions) _Sibron_'s presumption of collateral consequences. Of course there is no reason in principle for limiting the dissent's novel theory to felonies: If constitutionally adequate damage to reputation is produced by a parole board's finding of one more felony by a current inmate who has spent six of the last seven years in custody on three separate felony convictions, surely it is also produced by the criminal misdemeanor conviction of a model citizen. Perhaps for obvious reasons, the damage to reputation upon which the dissent would rest its judgment has not been asserted before us by petitioner himself.

523 U.S. at 16 n.8 (citations omitted). Following _Spencer_, we conclude that any harm to Duclos' reputation does not constitute a sufficient consequence collateral to his supervised release revocation and imprisonment.

Second, Duclos argues that the revocation may or will lead to the enhancement of any future sentences he may suffer under the United States Sentencing Guidelines. This argument fails. To be sure, under the Guidelines, Duclos could receive an enhancement

to his sentence if he were to be convicted of another federal crime. See, e.g., U.S.S.G. § 4A1.1(e) (adding points if defendant committed the instant offense less than two years after release from sentence of imprisonment exceeding sixty days); Meyers, 200 F.3d at 720 (after analyzing § 4A1.1, concluding, "[i]n short, the revocation of Meyers' supervised release status and resulting sentence lengthened the amount of time in which he is subject to a potential additional penalty imposed by the guidelines"). Spencer, however, rejected as too speculative the argument that the possibility that an order of revocation could be used to increase a sentence in a future proceeding was a collateral consequence because "it was contingent upon respondents' violating the law, being caught and convicted." 523 U.S. at 986-87. While Spencer was decided in the context of revocation of parole, we believe its logic applies with equal force here. See U.S.S.G. § 4A1.2(k) (failing to distinguish between revocation of parole and revocation of supervised release in calculation of criminal history points); Meyers, 200 F.3d at 720-22.

Third, Duclos asserts that the revocation and incarceration rendered him "incapable of complying with an Offer and Compromise Agreement made with the Internal Revenue Service pertaining to income taxes." This inability, he alleges, caused the IRS to find him in default of his agreement to timely pay taxes that were assessed between 1996 and 2001. He contends that a

vacation of the guilty finding as to violation number two could be a "key factor" in convincing the IRS to reinstate his agreement and relinquish his debt.  We do not believe this scenario, even if accurate, would cause the revocation to have continuing collateral consequences.  The continued effect of the revocation upon the tax issues is too remote and speculative.  Cf. Clark, 193 F.3d at 847-48 (rejecting appellant's claim that financial and physical harm caused by extension of sentence constituted collateral consequences because the "injuries" are "independent").  Spencer rejected a somewhat stronger argument of this sort.  There, the petitioner argued that the revocation was a collateral consequence because, so long as the revocation stood, he was effectively foreclosed from pursuing a damages action under 42 U.S.C. § 1983.  523 U.S. at 17.  The Court rejected the argument, inter alia, because it was based on the faulty notion that such a damages action "must always and everywhere be available."  Spencer, 523 U.S. at 17.  Here, it is likewise incorrect to believe that Duclos has suffered a cognizable injury by his not being provided with a further opportunity to challenge the judgment of revocation so as -- if successful -- to seek relief from the IRS in a wholly different matter, as to which the revocation is, at best, tangential.

Lastly, Duclos argues that the diminishment in his future credibility as a witness constitutes a collateral consequence of the revocation.  In particular, Duclos alleges that he has been

-11-

summoned by the State of New Hampshire to testify on behalf of the state in connection with a criminal case against an individual[8]. He further alleges that he will be filing a civil suit against this individual in an attempt to recover $25,000 that the latter has allegedly stolen. Duclos contends that the revocation will be used as a means to "savage his credibility" in both proceedings and, thus, constitutes a collateral consequence. We do not find this argument persuasive. In Spencer, the Court rejected a similar argument:

> Moreover, as to the possibility that petitioner (or a witness appearing on his behalf) would be impeached with the parole revocation, it is far from certain that a prosecutor or examining counsel would decide to use the parole revocation (a "discretionary decision" similar to those of the sentencing judge and employer discussed in Lane, supra, 455 U.S. 624 at 632-633); and, if so, whether the presiding judge would admit it, particularly in light of the far more reliable evidence of two past criminal convictions that would achieve the same purpose of impeachment, see State v. Comstock, 647 S.W.2d 163, 165 (Mo. App. 1983).

532 U.S. at 16. Duclos' underlying criminal conviction, which has not been challenged here, was, inter alia, for filing a false statement with the United States Postal Service. It, therefore, directly impugns his credibility as opposed to whatever effect would be caused by a factfinder's further knowledge that his

---

[8]While Duclos names the individual in his pleadings, we see no reason to do so here.

-12-

supervised release term has been revoked.  <u>See</u> Fed. R. Evid. 609(a)(2) (for purpose of attacking credibility of a witness "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment").  Thus, even assuming that Duclos becomes a witness, it is questionable whether examining counsel would bother to use the revocation to impeach him rather than or in addition to his underlying conviction.  Any harm to his credibility from the revocation is too merely cumulative and speculative to amount to a separate collateral consequence.

We hold that Duclos' lead appeal does not satisfy the case-or-controversy requirement and is therefore moot.  As both of Duclos' appeals are moot, they are **DISMISSED.**