**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MARCEL DARON KING,
*Defendant-Appellant.*

No. 17-10006

D.C. No.
3:10-cr-00455-WHA-1

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted March 16, 2018
San Francisco, California

Filed June 4, 2018

Before: J. Clifford Wallace and Marsha S. Berzon, Circuit
Judges, and Kimberly J. Mueller,[*] District Judge.

Opinion by Judge Mueller

---

[*] The Honorable Kimberly J. Mueller, United States District Judge for the Eastern District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel dismissed as moot an appeal from a revocation of supervised release.

The panel held that the appeal was moot because the Bureau of Prisons had unconditionally released the defendant from custody, and his sentence was complete. The panel found insufficient to avoid mootness the collateral consequence that the revocation charge, which involved a finding that the defendant committed statutory rape, could require him to register as a sex offender in the future.

## COUNSEL

Carmen A. Smarandoiu (argued), Chief, Appellate Unit; Daniel P. Blank, Senior Litigator; Steven G. Kalar, Federal Public Defender; Office of the Federal Public Defender, San Francisco, California; for Defendant-Appellant.

Philip Kopczynski (argued), Assistant United States Attorney; J. Douglas Wilson, Chief, Appellate Division; Alex G. Tse, Acting United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

MUELLER, District Judge:

This appeal arises from a revocation of supervised release. In January 2017, after an evidentiary hearing on statutory rape allegations, the district court revoked Marcel King's term of supervised release and sentenced him to 24 months in prison. On appeal, King argues the district court violated his due process rights by excluding him from the courtroom for a portion of the minor victim's testimony and by admitting into evidence a hearsay report without live witness authentication.

King's appeal was fully briefed on October 31, 2017. On January 5, 2018, the Bureau of Prisons unconditionally released him from custody. His sentence is complete. The government argues King's appeal is now moot because King identifies no "ongoing" collateral consequences caused by his revocation. King counters that he does face collateral consequences, namely, the potential that his revocation charge, which involved a finding that he committed statutory rape, could require him to register as a sex offender and could affect his ability to visit his children.

Although King raises a novel collateral consequences argument, the consequences he identifies are, under controlling case law, inadequate to maintain his case here. As explained below, this appeal is MOOT.

I.

In the parole revocation context, the Supreme Court has held that without proof of ongoing collateral consequences

from that revocation, an unconditional release from custody moots a defendant's challenge to his allegedly erroneous revocation. *Spencer v. Kemna*, 523 U.S. 1, 8–16 (1998). Our Circuit has not extended *Spencer* to the supervised release revocation context in a precedential opinion. In *United States v. Palomba*, 182 F.3d 1121, 1123 (9th Cir. 1999), we did cite *Spencer* in dismissing for lack of standing a defendant's challenge to the sentencing court's criminal history score calculation. In that case, because Palomba challenged only the length of his "now-completed" term of prison and supervised release—and not the "correctness of [his] conviction"—he lacked standing unless he could show the alleged miscalculation caused collateral consequences. *Id.* In *United States v. Verdin*, 243 F.3d 1174, 1177–79 (9th Cir. 2001), we distinguished *Spencer* because, in *Verdin*, the appellant was still facing conditions of supervision after his release from custody.[1]

Other Circuits to address the question have applied *Spencer* uniformly to appeals from supervised release revocations. *See*, *e.g.*, *United States v. Hardy*, 545 F.3d 280, 284 (4th Cir. 2008); *United States v. Jackson*, 523 F.3d 234, 241 (3d Cir. 2008); *United States v. Mazzillo*, 373 F.3d 181, 182–83 (1st Cir. 2004); *United States v. Meyers*, 200 F.3d 715, 721 n.2 (10th Cir. 2000); *United States v. Clark*,

---

[1] A number of our unpublished decisions have cited *Spencer*, *Palomba* or both to summarily dismiss as moot appeals from supervised release revocations where the supervised release sentence imposed had already ended and no cognizable collateral consequences were identified. *See*, *e.g.*, *United States v. Falcon*, 693 F. App'x 681, 682 (9th Cir. 2017); *United States v. Moore*, 691 F. App'x 873 (9th Cir. 2017); *United States v. Rodriguez-Barcenas*, 687 F. App'x 563, 564 (9th Cir. 2017); *United States v. Thomas*, 122 F. App'x 352, 353 (9th Cir. 2005).

193 F.3d 845, 847–48 (5th Cir. 1999) (per curiam); *United States v. Probber*, 170 F.3d 345, 347–49 (2d Cir. 1999).

Supervised release differs from parole in some respects. Supervised release "follows a term of imprisonment"; parole conditionally "shorten[s]" a term of imprisonment. *United States v. Kincade*, 379 F.3d 813, 817 n.2 (9th Cir. 2004) (en banc); *see also Morrissey v. Brewer*, 408 U.S. 471, 477 (1972) ("The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence."); *Johnson v. United States*, 529 U.S. 694, 697 (2000) (defining supervised release as "a form of postconfinement monitoring" that "follow[s] imprisonment"). And supervised release is administered and enforced by a sentencing court; parole is generally administered by an independent commission or board. *See id.* at 696–97; *see generally* 18 U.S.C. § 3583.

But *Spencer*'s reasoning does not rely on the aspects of parole that differ from supervised release. *Spencer* held that "some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if [a] suit is to be maintained." 523 U.S. at 7. *Spencer* was "willing to presume that a wrongful criminal conviction has continuing collateral consequences"; "[i]n the context of criminal conviction the presumption of collateral consequences is likely to comport with reality." *Id*. at 8, 12. But the Court did not "extend[]" that presumption "to challenges of parole termination," even when the basis for parole termination was a sex crime. *Id*. at 12; *see also id.* at 5. *Spencer* reasoned that the collateral consequences of parole revocations—in employment, future parole decisions, and future sentencing decisions—are more speculative than the "obvious" "civil disabilities" that result

from criminal convictions. *Id*. at 12–13. This reasoning applies equally to revocation of supervised release, which does not concern any of the "civil disabilities" that distinguish the collateral consequences of criminal convictions from revocation proceedings. We are therefore bound by *Spencer*.

Because King has been released from custody with no supervision conditions, *Spencer*'s mootness standard applies.

## II.

Unless King can show his revocation is causing "some concrete and continuing injury other than the now-ended incarceration," his claim is moot. *See Spencer*, 523 U.S. at 7. In other words, the court does not "presume" King's revocation causes collateral consequences adequate to state an injury-in-fact once he is released from custody; King now has the burden to "demonstrate[]" he is facing collateral consequences. *Id*. at 14.

King has not met his burden. He contends that because his revocation was based on a finding that he committed statutory rape, he may be forced in the future to register as a sex-offender, which could affect his ability to visit his own children. Although sex-offender registration is a collateral consequence of a criminal conviction for statutory rape, *see, e.g.*, *Williamson v. Gregoire*, 151 F.3d 1180, 1182–83 (9th Cir. 1998), King was not convicted of statutory rape. Rather, in a supervised release revocation proceeding, the district court found by a preponderance of the evidence that King violated a state law criminalizing statutory rape, and then revoked King's term of supervision. King argues he nonetheless faces a "real and present danger" that the charge

underlying his revocation, though not leading to a conviction, may soon subject him to registration.

To support his argument, King cites laws throughout the United States that have extended sex registry requirements beyond criminal convictions. He points to five state laws requiring sex offender registration by a defendant who was charged with committing a registrable offense, but later found not guilty by reason of insanity. *See* Cal. Pen. Code § 290.004; Colo. Rev. Stat. § 16-8-115(4)(a); 730 Ill. Comp. Stat. 150/2, 150/3; N.J. Stat. Ann. § 2C:7-2(a)(1); Wash. Rev. Code § 9A.44.130. He identifies laws mandating sex offender registration based on criminal convictions suffered in foreign jurisdictions, where certain due process protections may not have applied. *See* Neb. Rev. Stat. § 29-4003; 730 Ill. Comp. Stat. 150/2 (A)(1)(a). He also refers to a law mandating registration for defendants initially charged with committing a registrable offense, but then convicted of a different offense arising from the "same set of circumstances." *See* Minn. Stat. § 243.166 subd. 1b. Identifying a trend of extending registration requirements he says these state laws represent, King argues the trend may soon reach him and others whose supervised release revocations are based on a finding they committed a registrable offense.

King's argument raises a novel question. How likely must the future possibility of a requirement of sex-offender registration be for there to be an injury-in-fact? The question is an important one because the Supreme Court has determined that certain sex-offender registration requirements are nonpunitive. They therefore may be broadened on an ongoing basis and applied retroactively to those who were convicted earlier of a registrable offense. *See Smith v. Doe*,

538 U.S. 84, 105–06 (2003) (because Alaska's statute broadening the reach and accessibility of sex offender registry was "nonpunitive . . . its retroactive application d[id] not violate the *Ex Post Facto* Clause.").

King need not wait until his name is etched on a registry to argue he has suffered collateral consequences. But he must show registration is more than "a matter of speculation." *Spencer*, 523 U.S. at 16. This he has not done. In sentencing him on his revocation, the district court did not impose a sex-offender registration condition. King has not identified *any* existing or impending laws extending sex-offender registration requirements to defendants whose supervised release or parole revocations were based on a finding of commission of a registrable offense. He has not said he plans to move to a state where the risk of a future registration requirement is high. On this record, the future registration requirement King hypothesizes is too remote to constitute the "concrete and continuing injury" required to avoid mootness. *Spencer*, 523 U.S. at 7.

This conclusion applies equally to King's argument that the consequences of his revocation may hinder his ability to visit his own children. The record contains no information on an existing custody arrangement, or any statutory or factual suggestion that any such arrangement may be in jeopardy as a result of King's revocation charge. To the extent King argues the potential for a registration requirement in the future could affect his visitation rights, the argument fails for the reasons discussed above with respect to a hypothetical threshold registration requirement.

III.

Because King has fully completed the sentence imposed for his revocation of supervised release and has identified only speculative and hypothetical collateral consequences flowing from the charge underlying his revocation, this appeal is MOOT. We therefore do not reach the merits of King's challenge to his revocation hearing on due process grounds.

King's appeal is **DISMISSED** as moot.