FILED
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**June 3, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

NEW MEXICO CATTLE GROWERS'
ASSOCIATION; SPUR LAKE CATTLE
COMPANY; NELSON SHIRLEY; ALLEN
CAMPBELL; HUMANE FARMING
ASSOCIATION,

      Petitioners - Appellants,

v.

UNITED STATES FOREST SERVICE;
ANIMAL AND PLANT HEALTH INSPECTION
SERVICE; CAMILLE HOWES, in her official
capacity as Supervisor of the Gila National Forest;
TOM VILSACK, in his official capacity as
Secretary of the United States Department of
Agriculture; RANDY MOORE, in his official
capacity as Chief of the U.S. Forest Service;
MICHIKO MARTIN, in her official capacity as
Southwestern Regional Forester; HENRY
PROVENCIO, in his official capacity as District
Ranger for the Wilderness Ranger District, Gila
National Forest; JANET BUCKNALL, in her
official capacity as Deputy Administrator of the
Animal and Plant Health Inspection Service;
KEITH WEHNER, in his official capacity as
Western Regional Director, Animal and Plant
Health Inspection Service,

      Respondents - Appellees,

and

CENTER FOR BIOLOGICAL DIVERSITY,

      Intervenor Respondent - Appellee.

_____

No. 25-2034
(D.C. No. 1:23-CV-00150-JB-
GBW)
(D.N.M.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **BACHARACH**, and **FEDERICO**, Circuit Judges.

_____

This case concerns the U.S. Forest Service's decades-long efforts to remove feral cattle from the Gila National Forest in New Mexico. After years of largely unsuccessful nonlethal removal operations, the Forest Service in 2023 released a decision memorandum authorizing the lethal removal of the Gila cattle by aerial-based shooting. The New Mexico Cattle Growers' Association, along with other plaintiffs (collectively, "the Cattle Growers"), challenged the Forest Service's decision memo under the APA and the National Environmental Policy Act (NEPA) seeking declaratory and injunctive relief.

The district court denied the Cattle Growers' request for a temporary restraining order, allowing the Forest Service's aerial shooting operations to proceed. The Forest Service completed its removal operations in December 2023, and the district court subsequently dismissed all the Cattle Growers' claims.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

During the pendency of the Cattle Growers' appeal, the Forest Service withdrew the challenged memo and issued new guidance directing agency officials to stop using lethal methods to remove any remaining Gila cattle.  The prospective relief the Cattle Growers seek can thus no longer be given and this case does not present a live case or controversy.  Accordingly, we **DISMISS** the Cattle Growers' appeal as moot.  We also **VACATE** the district court's judgment and remand with directions to dismiss the case because the Forest Service, as the prevailing party below, mooted this appeal by withdrawing its decision memo.

## I.    Background

In the 1970s, a federal grazing permittee declared bankruptcy and abandoned hundreds of domesticated cattle in the Gila Wilderness of the Gila National Forest.  Over time, these Gila cattle multiplied and roamed free in the forest.  The Forest Service sought to remove the feral cattle because it found their presence and severe overgrazing harmed the forest's environment and water quality.  For decades, the Forest Service conducted nonlethal ground-based removal operations.  But despite removing hundreds of cattle over the years, those efforts failed to meaningfully reduce the herd's population.

In 2022, the Forest Service changed course and decided to conduct lethal removal of the Gila cattle.  It contracted with the Department of Agriculture's Animal Inspection Service to kill the cattle with a sharpshooter mounted in a hovering helicopter.  The Cattle Growers sued and moved for a TRO seeking to stop the aerial shooting.  Some plaintiffs were ranchers with grazing permits in the Gila

3

National Forest who worried their cattle could mistakenly be killed. Other plaintiffs claimed the aerial shooting would create aesthetic and environmental harms to the forest in which they frequented. But after the district court denied the TRO request, the agency completed its planned removal operation, killing sixty-five Gila cattle. The Forest Service and the Cattle Growers then stipulated in June 2022 to the dismissal of the suit because the agency's removal operation was complete and it had no immediate plans to conduct additional shootings.

Yet in November 2022, the Forest Service issued a proposal to conduct more aerial shootings to complete the removal of the Gila cattle. The agency solicited public comments on its proposal. On February 16, 2023, the Forest Service issued a decision memo authorizing the agency to complete removal of the herd by utilizing both lethal and nonlethal methods. The memo stated the agency intended to conduct recurring aerial shooting operations until the goals of the operation were met.

The Cattle Growers again sued the agency under the APA and NEPA and moved for a TRO. They sought declaratory and injunctive relief against the Forest Service's February 2023 decision memo. Among other claims, the Cattle Growers alleged the Forest Service was required to first capture the Gila cattle and offer them for sale before it could kill them because the cattle were "unauthorized livestock" under the agency's impoundment regulations. *See* 36 C.F.R. § 262.10. But the district court denied the Cattle Growers' TRO request once again.

The Center for Biological Diversity, an environmental organization concerned about the detrimental effects of the Gila cattle on the forest, intervened in the lawsuit

4

to also defend the agency's removal actions. The Forest Service subsequently conducted aerial shooting and ground-based operations throughout 2023, completing its final removal operation in December of that year.

In January 2025, the district court dismissed all the Cattle Growers' claims with prejudice. This appeal followed.

While the appeal was pending, the Forest Service withdrew the February 2023 memo because it determined no Gila cattle remained in the forest. The Forest Service reasoned that because it achieved the intended purposes of its removal operations, the memo was no longer needed. At the same time, the Chief of the Forest Service issued a directive ordering the agency's officers "to refrain from the use of lethal management practices when removing estray or feral cattle." Aple. Br., Ex. E (Forest Service Letter dated November 13, 2025). The directive also instructed agency officers to utilize the agency's impoundment regulations under 36 C.F.R. § 262.10 as a framework when removing feral cattle in the future.

## II.    Discussion

The Center for Biological Diversity and the Forest Service argue the appeal is moot because the agency withdrew the challenged memo and disavowed its intention to use lethal methods in future removal operations. And although the district court in its order found the case was not moot, it reached that conclusion before the Forest Service withdrew the memo and issued its directive. In any event, we review the issue of mootness de novo because we have no jurisdiction if the appeal is moot. *See*

*Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).

"Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies." *Unified Sch. Dist. No. 259, Sedgwick Cnty. v. Disability Rts. Ctr. of Kan.*, 491 F.3d 1143, 1147 (10th Cir. 2007) (quoting *Seneca–Cayuga Tribe v. Nat'l Indian Gaming Comm'n*, 327 F.3d 1019, 1028 (10th Cir. 2003)).  The Article III case-or-controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1114 (10th Cir. 2016) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  As a result, even if a case "poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Id.* (internal quotation marks omitted).  When a plaintiff seeks prospective relief—*e.g.*, a declaratory judgment or injunction—"the mootness inquiry looks to whether the requested relief will actually alter the future conduct of the named parties." *Id.*  "The crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world." *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotation marks omitted).

The Cattle Growers seek declaratory and injunctive relief against the Forest Service's 2023 decision memo and the aerial shooting operations that it authorized. But because the agency withdrew the memo, the challenged action no longer exists.

6

And because the agency has disavowed the use of lethal removal methods, the prospective injuries from which the Cattle Growers seek judicial relief—*e.g.*, accidental killing of their cattle, aesthetic harms to the environment—have disappeared. *See United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000). Thus, even if the Cattle Growers prevailed in this appeal, we cannot afford the relief they seek; the Cattle Growers "can no longer satisfy the Article III case or controversy jurisdictional requirement and the appeal is moot." *Id.*

The Cattle Growers, however, contend the case is not moot because there have been recent sightings of feral cattle in the forest, and the Gila cattle may therefore repopulate. *See* App. 697. They argue that if that happens, the Forest Service might decide to reconvene aerial shooting. The Cattle Growers contend the case thus falls under two doctrinal exceptions to mootness: (1) the voluntary cessation exception, and (2) the capable of repetition, yet evading review exception.

We review each contention in turn.

### A.    *Voluntary Cessation*

The voluntary cessation "exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Rio Grande Silvery Minnow*, 601 F.3d at 1115 (quotation marks omitted). "Voluntary actions may, nevertheless, moot litigation if two conditions are satisfied: '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged

7

violation.'" *Id.* (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "[T]he withdrawal or alteration of administrative policies can moot an attack on those policies." *Id.* at 1117 (citation modified). "And the mere possibility that an agency might rescind amendments to its actions or regulations does not enliven a moot controversy." *Id.* (internal quotation marks omitted).

*First*, there is no reasonable expectation the Forest Service will resume aerial shooting of the Gila cattle. Although the parties dispute whether any Gila cattle remain in the forest, the agency nevertheless withdrew the challenged memo and directed its officers to stop using lethal methods to remove what feral cattle might remain. "[G]overnment self-correction provides a secure foundation for mootness so long as it seems genuine." *Brown v. Buhman*, 822 F.3d 1151, 1167–68 (10th Cir. 2016) (citation modified). Such is the case here, where the Forest Service withdrew the challenged memo—despite the district court affirming its actions as lawful—because the agency wanted to "improve relationships, and to foster better communication and coordination" with "the local livestock industry." Aple. Br., Ex. E (Forest Service Letter dated November 13, 2025). *Cf. West Virginia v. EPA*, 597 U.S. 697, 720 (2022) (finding an appeal was *not* moot because the agency made no representation that it would "not reimpose" the challenged regulation if the litigation were "resolved in its favor" (internal quotation marks omitted)).

*Second*, interim events have irrevocably eradicated the alleged harms from the aerial shooting: the Cattle Growers' alleged injuries were all forward-looking, the threat of which were eliminated by the Forest Service's withdrawal of the memo and

8

repudiation of using aerial shooting again. As a result, the voluntary cessation exception does not apply. *See Rio Grande Silvery Minnow*, 601 F.3d at 1119 ("[*S*]*ome* possibility that [the agency] would revert to its" previous challenged ways is not "sufficient to warrant application of the voluntary-cessation exception.").

### B.    Cases Capable of Repetition, Yet Evading Review

Another exception to the mootness doctrine is when "cases are capable of repetition, yet evading review." *Unified Sch. Dist. No. 259*, 491 F.3d at 1147. (quotation marks omitted). "For a case to dodge dismissal for mootness under" this exception, "'there must be a reasonable expectation that the same complaining party will be subjected to *the same action* again.'"[1] *Id.* (emphasis added) (quoting *Hain v. Mullin*, 327 F.3d 1177, 1180 (10th Cir. 2003) (en banc)).

"[W]hen the legality of hypothetical future conduct depends on the specific context and content of the disputed action," a case seeking only prospective relief "fails to meet the capable of repetition prong of the exception to mootness." *Id.* at 1147–48 (internal quotation marks omitted). Because the Forest Service directed that any future removal of the Gila cattle would be different than its previous, but now-renounced aerial shooting method, the Cattle Growers are unlikely to face *the same action* again. *See, e.g., Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460

---

[1] A party seeking to avoid mootness under the capable-of-repetition exception must *also* show "the duration of the challenged action [is] too short to be fully litigated prior to its cessation or expiration." *Hain*, 327 F.3d at 1180. But because we conclude there is no reasonable expectation that the Cattle Growers will endure the same action, we need not address this prong.

F.3d 13, 22–23 (D.C. Cir. 2006) ("Particular decisions to remove wild [animals] are highly fact-specific. How a herd will be managed in the future after the initial culling is anyone's guess . . . . If there are to be more roundups in the future—itself an open question—it remains to be seen whether they will be of the same magnitude as those which have come before, and whether the same criteria are applied.").

The agency also directed its officers to utilize its impoundment regulations as a framework for any future removal of feral cattle. This direction is "the precise relief that [the Cattle Growers] requested"; as such, their "claim for declaratory and injunctive relief with respect to the [Forest Service's] old rule is therefore moot." *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 338–39 (2020) (per curiam).

We thus conclude the appeal is moot because neither exception applies.

### C.    *Vacatur*

"When a civil case becomes moot pending appellate adjudication, '[t]he established practice . . . is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Lane v. Simon*, 495 F.3d 1182, 1187 (10th Cir. 2007) (alteration in original) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). "A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994). "The same is true when mootness results from *unilateral action of the party who prevailed below*." *Id.* (emphasis added). Ultimately, "[w]hether any

10

opinion should be vacated on the basis of mootness is an equitable question." *Rio Grande Silvery Minnow*, 601 F.3d at 1129 (quotation marks omitted).

Although we recognize and appreciate the district court's thorough and persuasively reasoned order, we must vacate its judgment in fairness to the Cattle Growers. The Forest Service—the prevailing party below—took unilateral action that mooted this case; the Cattle Growers, now deprived of their opportunity to appeal, should not be forced to acquiesce in the judgment. *See U.S. Bancorp Mortg. Co.*, 513 U.S. at 25. *See also Munsingwear*, 340 U.S. at 40 (Vacatur "clears the path for future relitigation of the issues between the parties . . . .").

## III.   Conclusion

For these reasons, we dismiss the appeal as moot, vacate the district court's judgment, and remand with directions to dismiss.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

11