**Enith Lester TAYLOR, Jr., Appellant,**

**and**

**Larry Parnell; Jerry Lee Beeson, Intervenor Ptfs.**

**v.**

**P.M. ROGERS; James Woodard; Rae H. McNamara, Appellees.**

No. 85–6413.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1985.

Decided Jan. 21, 1986.

Charles T.L. Anderson, Apex, N.C., (Richard E. Giroux; Raleigh, N.C., Prisoner Legal Services, Inc. on brief) for appellants.

Jacob L. Safron, Sp. Deputy Atty. Gen., Raleigh, N.C., (Lacy H. Thornburg, Atty. Gen., Webster, N.C., on brief) for appellees.

Before WINTER, Chief Judge, SNEEDEN, Circuit Judge, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

PER CURIAM:

Three inmates of North Carolina's penal institutions appeal from the summary judgment entered for defendants in the inmate's suits to redress claimed deprivations of due process of law, equal protection of the laws and the Eighth Amendment guarantee against cruel and unusual punishment arising from their being in protective custody. We affirm.

### I.

Plaintiffs are all prison inmates who have elected to be placed in protective custody because of actual or perceived danger to them from other inmates. Two are confined at Caswell prison and one at Southern Prison Unit.[1] They alleged and offered

---

1. The two plaintiffs confined at Caswell are Enith L. Taylor and Larry Parnell. Taylor has, during the pendency of this litigation, been returned to the general prison population. This renders moot his claim for declaratory and injunctive relief, but he also claims money dam-

proof to establish that as protective custody inmates they received different and more restrictive treatment than inmates in the general prison population with regard to: (1) access to religious services, (2) physical recreation opportunities and facilities, (3) recreation (television, films), (4) availability of rehabilitative programs, (5) availability of prison employment, (6) family visitation, (7) family phone privileges, (8) access to law library, (9) canteen calls, and (10) access to library. They offered proof also that prisoners in protective custody in other North Carolina penal institutions did not have imposed on them restrictions of such severity. Further, they offered proof that they have been denied promotion to honor grade or to minimum security custody, with attendant privileges, unless and until they were willing to forgo protective custody. Finally, they adduced expert testimony that the protective custody practices at Caswell and elsewhere thwart rehabilitation and correction of the subject inmates and "would foreseeably result in the extension of protective custody inmates' term of imprisonment." The expert expressed the view, as a result of his review of records of the North Carolina prison system, that minimum custody is denied to inmates in protective custody and that for inmates serving sentences beginning prior to July 1, 1981, minimum custody "is virtually a prerequisite for parole review." [2]

Defendants do not dispute some of the differences in treatment between inmates in protective custody and inmates in the general prison population. But they offered explanations for the differences. For example, at Caswell, which is designated as a place of temporary assignment for protective custody inmates and where, with few exceptions, prisoners remain no longer than sixty days, there is no law library.

There is no telephone in the cell block in which prisoners in protective custody are lodged. The exercise yard for the segregation facility is not as commodious as that for the general population. Overall, the limited availability of staff and the need to protect prisoners in protective custody limits or prohibits organized recreational activities, organized drug counseling, vocational training and other rehabilitative classes, the availability of organized religious services, visitation rights and the availability of gain time or incentive wage jobs.

Similarly, at Southern Prison, where the restrictions are not as severe as at Caswell, the limited availability of staff and considerations of security, restrict the prisoners in protective custody, as compared to prisoners in the general population, to less time out of their cells, less time outdoors, fewer religious services, fewer or no organized recreational activities, and fewer incentive wage-gain time jobs and gain-time jobs. Defendants attempted to explain these acknowledged differences by offering proof establishing that overall, with respect to both institutions, the restrictions on prisoners in protective custody vis-a-vis prisoners in the general prison population stemmed from considerations of security, and that differences among prisoners in protective custody in various institutions resulted from differences in facilities and staffing among those institutions.

Plaintiffs advanced to the district court three theories entitling them to equitable and legal relief [3]—denial of equal protection, denial of due process, and denial of the right to be free from cruel and unusual punishment by conditioning the grant of protection from inmate violence on the relinquishment of amenities and privileges.

ages so that his entire case has not been mooted. Parnell was paroled on March 1, 1985 and parole supervision has now been terminated. Except for his claim for damages, his suit is also moot. The third plaintiff, Jerry Lee Beeson, was lodged at Southern Prison Unit. He has since been transferred to Odom Correctional Institution.

2. After July 1, 1981, it was the view of the expert that certain sentences without the possibility of parole could be imposed.

3. Plaintiffs also sought class certification. This was denied, and no appeal is taken from the denial.

The magistrate, assigned by the district court to hear the case, found, on motion for summary judgment, that the restrictions applied to prisoners in protective custody were rationally related to the need for prison security and order and therefore did not deny them equal protection of the laws. He rejected also the due process claim, ruling that *Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854, 861 n. 16 (4 Cir.1975), held that when a prisoner elects protective custody, he may not contend that his right to due process has been abridged by the restrictions and limitations appertaining thereto. Finally, the magistrate rejected plaintiffs' argument that the denial to prisoners who elect protective custody of the opportunities afforded prisoners in the general prison population is a denial of their Eighth Amendment rights.

## II.

█ The rights of prisoners in protective custody have been considered by us in a series of cases beginning with *Breeden v. Jackson,* 457 F.2d 578 (4 Cir.1972), and followed by *Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854 (4 Cir.1975) (in banc), and *Allgood v. Morris,* 724 F.2d 1098 (4 Cir.1984). *See also Shrader v. White,* 761 F.2d 975 (4 Cir.1985). Each of these decisions has generated separate dissenting or concurring opinions, all of which would support plaintiffs' equal protection and due process claims. Nonetheless, it is the majority view in this circuit, by which we are bound, that conditions imposed on prisoners requesting protective custody less favorable than those afforded the general prison population do not give rise to a meritorious claim of denial of equal protection or a denial of due process where the restrictions bear a rational relationship to the protection of the prisoner requesting such relief and where the restrictions are not so onerous as to jeopardize his health. These cases, on the undisputed facts before the magistrate as to the reasons for the restrictions being attached, require that we reject plaintiffs' equal protection and due process claims.

█ We also think that our prior decisions require us to reject plaintiffs' contentions containing a colorable claim of Eighth Amendment violations. In essence, their argument is as follows: in order to gain protective custody status, thus exercising their Eighth Amendment right to be free from prison violence, plaintiffs are required to give up many of the amenities available to the general prison population. Analogous to restrictions on rights under the First Amendment, such restrictions may be imposed on them only to the minimum extent necessary to achieve the desired objective of their protection. If a more severe restriction is imposed on them than is the minimum restriction necessary to ensure their safety, they contend that the imposition of the restriction is unnecessary punishment and prohibited by the Eighth Amendment. One court has indicated agreement with the argument, *see Wojtczak v. Cuyler,* 480 F.Supp. 1288, 1306–07 (E.D.Pa.1979), but the argument has gained no wider acceptance. We think that it has been impliedly rejected in *Breeden* and *Sweet* when in those cases we looked only for a rational relationship between restriction and objective rather than the least possible restriction to achieve the objective, and, also in *Allgood,* 724 F.2d at 1101, when we said flatly that we had repeatedly refused to adopt the argument that "placement in protective segregation for someone who has not violated prison rules is a violation of the Eighth Amendment prohibition against cruel and unusual punishment."

We conclude therefore that on settled and binding precedents in this circuit, we must affirm the district court's judgment for defendants.

## III.

█ Although we affirm the judgment of the district court, we think it important to spell out what we do not decide. We do not express any view with reference to

plaintiffs' contention that they are receiving less consideration for parole than inmates in the general prison population.

The case before us is not a class action, and plaintiffs have not appealed the denial of class certification. As we have earlier noted, one of the three plaintiffs has returned to the general prison population and another has been paroled with a termination of parole supervision. The claim of unlawful restriction on consideration for parole stemming from their status of being in protective custody is moot as to them. Beeson, the third plaintiff, did not become a party to the action until after summary judgment for defendants was initially granted. He was then permitted to intervene pursuant to a stipulation conforming his claims to those of the original plaintiffs.

We therefore have no facts before us with regard to the only plaintiff possibly eligible to raise the claim. While plaintiffs offered evidence that the status of protective custody does limit consideration for parole, defendants offered proof that protective custody inmates have been paroled from a medium security environment and that the status of protective custody alone does not prevent parole consideration. As we have said, Beeson, because of his late entry into the proceedings, has not established that he presents a case or controversy regarding the alleged adverse effect of protective custody on his eligibility for parole.

Thus we do not reach the question of the possible constitutional infirmity of a system in which the status of voluntary protective custody standing alone has an adverse effect on eligibility for parole. We do not foreclose the possibility that reducing eligibility for parole solely because of protective custody status is a due process or other constitutional deprivation like the alleged conditions adversely affecting health in *Sweet;* neither do we decide that it does not constitute a constitutional violation.

AFFIRMED.