PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CALVIN HARDY, a/k/a Frankie Hall, a/k/a Stacy Long,

*Defendant-Appellant.*

No. 07-4685

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, Senior District Judge.
(3:98-cr-00307-REP-5)

Argued: September 22, 2008

Decided: November 6, 2008

Before WILLIAMS, Chief Judge, and TRAXLER
and GREGORY, Circuit Judges.

Dismissed by published opinion. Chief Judge Williams wrote
the opinion, in which Judge Traxler and Judge Gregory
joined.

## COUNSEL

**ARGUED**: Paul Geoffrey Gill, Assistant Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC

DEFENDER, Richmond, Virginia, for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, Sara E. Chase, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

## OPINION

WILLIAMS, Chief Judge:

Calvin Hardy appeals the district court's order revoking his supervised release and sentencing him to fourteen months imprisonment, contending that the district court lacked jurisdiction under 18 U.S.C.A. § 3583(i) (West 2000) because his term of supervised release expired prior to his revocation hearing. Because Hardy has been released from prison during the pendency of this appeal and is no longer on supervised release, however, we conclude that his appeal is moot and must be dismissed.

I.

On September 23, 1998, a grand jury in the Eastern District of Virginia returned an indictment charging Calvin Hardy with conspiracy to commit bank and Social Security fraud through the theft and passage of stolen checks, in violation of 18 U.S.C.A. § 371 (West 2000), as well as several counts of uttering forged and counterfeit securities and one count of fraudulent use of a social security number. Hardy pleaded guilty to the conspiracy charge on June 4, 1999. Thereafter, Hardy was sentenced to six months imprisonment with credit for four-and-a-half months of time served and the remaining one-and-a-half months to be served in home detention with

electronic monitoring followed by three years of supervised release. The district court also required Hardy to provide restitution of $16,169.

On January 5, 2001, Hardy was charged in a Petition on Supervised Release with violating four conditions of his supervised release. At a hearing on May 5, 2003, the district court granted the Government's motion to dismiss two of the alleged violations, and Hardy pleaded guilty to the other two violations—missing two appointments with his probation officer and failing to report a change in residence. For these violations, Hardy received a ten-month prison term, followed by three years of supervised release.

During this second period of supervised release, on September 27, 2004, the Government filed another Petition on Supervised Release. This petition alleged that Hardy had violated five conditions of his supervised release. Hardy's supervised release term expired on February 18, 2007, but Hardy was not arrested on this petition until June 13, 2007.

At a June 21, 2007 hearing, Hardy pleaded guilty to all five violations. The district court again revoked his supervised release, sentencing him to the statutory maximum of fourteen months imprisonment, with no supervised release to follow. Little to no information surfaced regarding the reason for the nearly three year delay between the Government's filing the petition in 2004 and Hardy's arrest and sentencing in 2007. The Government's attorney noted that Hardy had missed a home visit by his probation officer and subsequently stopped returning his probation officer's calls, and it agreed with the district court's statement that Hardy essentially "had no supervised release." (J.A. at 48.) Hardy's attorney agreed that the missed visit was Hardy's last contact with his probation officer and stated that the probation officer had indicated that a violation petition would likely be filed, but that he (Hardy's attorney) "d[id not] know what happened after that." (J.A. at 49.) To explain Hardy's absence, his attorney suggested that

Hardy, who learned he was HIV-positive while imprisoned, simply "had other things on his mind since then." (J.A. at 49.)

Hardy filed a timely appeal in this court, contending that, because the Government's three-year delay in arresting him led to the revocation hearing occurring after his supervised release expired, the district court lacked jurisdiction to revoke his supervised release. *See* 18 U.S.C.A. § 3583(i) (noting that a district court's power to "revoke a term of supervised release . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued").

During the pendency of Hardy's appeal, on June 17, 2008, Hardy was released from federal custody, having served the prison sentence he now challenges.[1] *See* Federal Bureau of Prisons Inmate Locator *http://www.bop.gov/iloc2/ LocateInmate.jsp* (last visited October 2, 2008) (searched by Register Number 43194-083). The district court's sentence included no additional period of supervised release, so Hardy's sentence for violating his supervised release is now complete. Based upon this factual development, the Government moved to dismiss Hardy's appeal as moot prior to oral argument.

## II.

The Government contends that Hardy's release moots his appeal. Because "[t]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006), we

---

[1]As noted, Hardy was sentenced to fourteen months imprisonment on June 21, 2007, yet released less than one year later, on June 17, 2008. The Government informs us that Hardy's release date is the result of Hardy receiving credit for time served prior to the June 21 revocation hearing and for good-time credit, pursuant to 18 U.S.C.A. § 3624(b) (West 2000).

address it first, and in this case, resolution of that question is determinative. Stated in its simplest form, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (internal quotation marks omitted). And, because "[t]his case-or-controversy requirement subsists through *all* stages of federal judicial proceedings, trial and appellate," *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (emphasis added), "[l]itigation may become moot during the pendency of an appeal," *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence." (internal quotation marks omitted)).

Clearly, if Hardy were still serving his fourteen-month sentence, no mootness concerns would exist. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement . . . ."). But, "[o]nce the convict's sentence has expired . . . some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Id.* The Supreme Court has found such "collateral consequences" for wrongful convictions, *see Sibron v. New York*, 392 U.S. 40, 55-56 (1968), but in *Spencer*, the Supreme Court declined to extend this doctrine to parole revocation challenges, *Spencer*, 523 U.S. at 12-16. The *Spencer* Court declined to "presume that collateral consequences . . . resulted from petitioner's parole revocation," *id.* at 14, and then concluded that none of

the claimed "collateral consequences" were sufficiently specific or concrete,[2] *id.* at 14-16.

Although Congress "eliminated most forms of parole in favor of supervised release" in the Sentencing Reform Act of 1984, *Johnson v. United States*, 529 U.S. 694, 696-97 (2000), courts considering challenges to revocations of supervised release have universally concluded that such challenges also become moot when the term of imprisonment for that revocation ends. *See United States v. Duclos*, 382 F.3d 62 (1st Cir. 2004); *United States v. Kissinger*, 309 F.3d 179 (3d Cir. 2002); *United States v. Meyers*, 200 F.3d 715 (10th Cir. 2000); *United States v. Probber*, 170 F.3d 345 (2d Cir. 1999). We agree with our sister circuits that *Spencer*'s holding logically extends to revocations of supervised release. Accordingly, "[i]n the absence of a presumption of collateral consequences, [Hardy] bears the burden of demonstrating collateral consequences sufficient to meet Article III's case-or-controversy requirement." *Probber*, 170 F.3d at 348. *See also United States v. Clark*, 193 F.3d 845, 847 (5th Cir. 1999) ("The petitioner has the burden to establish [some concrete and continuing] injury, and if he fails to satisfy his burden we must dismiss for lack of jurisdiction").

Perhaps recognizing the litany of "collateral consequences" already rejected by courts, Hardy has declined to identify any potential collateral consequences in this case. *See e.g.*, *Probber*, 170 F.3d at 349 (finding insufficient that probation revocation might adversely affect reputation, be used as character and/or impeachment evidence in future criminal or civil proceedings, be used in support of an upward departure under the

---

[2]Specifically, the petitioner in *Spencer v. Kemna*, 523 U.S. 1, 14-15 (1998), alleged four collateral consequences arising from the revocation of his parole: that the revocation could be used (1) to his detriment in future parole proceedings; (2) to increase his sentence in future sentencing proceedings; (3) to impeach his credibility at a future criminal or civil trial; and (4) to increase his chances of conviction if the events of the revocation were intrinsic to a new offense.

United States Sentencing Guidelines, or make future erroneous convictions more likely); *Meyers*, 200 F.3d at 719-20 (finding insufficient the possibility that violation of supervised release might increase criminal history score under the Sentencing Guidelines).

Instead, Hardy musters only a single argument to resist the conclusion that his appeal is moot. Hardy contends that his situation is distinct from the typical individual contesting the revocation of supervised release because the district court, according to Hardy, lacked jurisdiction in the first instance to revoke his supervised release. Hardy further notes that, of the courts who have found challenges to the revocation of supervised release moot upon the prisoner's release, none have addressed challenges to the district court's underlying jurisdiction under § 3583(i).[3]

Hardy is correct that "there is no unyielding jurisdictional hierarchy" with respect to the order in which a court must address jurisdictional questions, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999), such that "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits," *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) (internal quotation marks omitted). But that rule is of no moment in this case because "mootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so." *Spencer*, 523 U.S. at 18. Hardy's release from prison has left us without a "case or controversy" to decide, and "[w]e are not in the business of pronouncing that past actions which

---

[3]In *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000), the defendant also contended that the Government had "waived its right to revoke Meyers' release because it unreasonably delayed seeking revocation after the alleged violation." The Tenth Circuit, without specifically stating if Meyers was raising a jurisdictional argument, nonetheless concluded that Meyers' appeal was moot.

have no demonstrable continuing effect were right or wrong." *Id.*; *see also Calderon v. Moore*, 518 U.S. 149 (1996) (per curiam) ("[F]ederal courts may not give opinions upon moot questions or abstract propositions." (internal quotation marks omitted)).

Put simply, even assuming the district court lacked jurisdiction to revoke Hardy's supervised release, given Hardy's release from prison, there is no wrong to remedy and "an appeal should . . . be dismissed . . . when, by virtue of an intervening event, a court of appeals cannot grant 'any effectual relief whatever' in favor of the appellant.'" *Calderon*, 518 U.S. at 150 (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). Because Hardy has failed to identify any collateral consequences stemming from the revocation of his supervised release, his "requisite personal interest" in this litigation has evaporated. *Arizonans for Official English*, 520 U.S. at 68 n.22.

## III.

Accordingly, for the foregoing reasons, the Government's motion to dismiss Hardy's appeal as moot is granted.

*DISMISSED*