ON REHEARING

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARL MELVIN TOWNES,

    *Petitioner-Appellant,*

    v.

LARRY W. JARVIS, Warden; GENE
M. JOHNSON, Director, Virginia
Department of Corrections,

    *Respondents-Appellees.*

No. 05-7382

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(CA-04-582)

Argued: December 3, 2008

Decided: August 19, 2009

Before MOTZ, GREGORY, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Gregory joined. Judge Shedd wrote a dissenting opinion.

**ARGUED**: Justin Sanjeeve Antonipillai, Carl Ezekiel Ross, ARNOLD & PORTER, L.L.P., Washington, D.C., for Appel-

lant. Richard Carson Vorhis, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF**: Erika K. Woods, ARNOLD & PORTER, L.L.P., Washington, D.C., for Appellant. Robert F. McDonnell, Attorney General of Virginia, Richmond, Virginia, for Appellees.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

The Virginia Parole Board found Carl Melvin Townes ineligible for discretionary parole. After a state court denied him habeas relief, Townes filed a petition for a writ of habeas corpus in federal court, claiming that the parole ineligibility determination violated his due process and equal protection rights. The district court dismissed the petition. We granted a certificate of appealability on both constitutional claims. Because the state released Townes from prison during the pendency of this appeal, it initially contends that Townes's claims are now moot. Alternatively, the state asserts that the district court properly dismissed the claims. Although we do not find the claims moot, we agree with the district court that Townes has failed to state any claim upon which relief can be granted and so affirm its dismissal of the case.

I.

During a ten-day period in February 1991, Townes robbed three fast-food restaurants in different Virginia counties. For two of these crimes, the state specifically convicted Townes of using or displaying a firearm as part of the felony offenses. But for the third, Townes pled guilty to common law robbery in exchange for the government declining to prosecute the additional firearm charge with which it charged Townes. As a result of these various convictions, the state committed

Townes to the custody of the Virginia Department of Corrections.

In Virginia, a prisoner generally becomes eligible for parole after serving a specified portion of his sentence. *See* Va. Code Ann. § 53.1-151(A) (2005). However, the state's "three-strikes" statute provides that "[a]ny person convicted of three separate felony offenses of (i) murder, (ii) rape or (iii) robbery by the presenting of firearms or other deadly weapon . . . when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole." *Id.* § 53.1-151(B1). After the Department of Corrections makes a determination of parole ineligibility under this statute, the Virginia Parole Board ("the Board") may review that decision. *Id.*

The Board considered and rejected Townes's parole application, finding him ineligible for parole consideration pursuant to the three-strikes statute. Townes then filed a habeas corpus petition in the Supreme Court of Virginia, arguing that the Board violated his due process rights in its method of counting his predicate offenses and violated his equal protection rights by discriminating against him because of his race. The state court promptly dismissed his habeas petition as "frivolous." *Townes v. Dir. of the Dep't of Corrs.*, No. 032123 (Va. Nov. 5, 2003).

Townes next filed this habeas petition pursuant to 28 U.S.C. § 2254 (2006), naming as respondents Larry W. Jarvis, the warden of his prison, and Gene M. Johnson, the Director of the Virginia Department of Corrections (collectively "the Warden"). Townes again asserted that the Board's parole ineligibility determination violated his due process and equal protection rights. The district court granted the Warden's motion to dismiss. Townes timely appealed.

While this appeal was pending, Virginia released Townes from prison on mandatory parole pursuant to Va. Code Ann. § 53.1-159 (2005). In addition to the conditions imposed by

his parole, Townes must also serve a period of probation administered by the state courts.

## II.

Initially, the Warden contends that Townes's release from custody moots this case. "[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction . . . . [A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quotations and citations omitted). Particularly relevant here, "[m]ootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (*quoting U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

Thus, for a controversy to be moot, it must lack at least one of the three required elements of Article III standing: (1) injury in fact, (2) causation, or (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Warden does not suggest that Townes lacked standing when he filed this complaint, but instead contends that Townes's *release* from prison moots this action. For the reasons that follow, however, Townes demonstrates that the Board's parole-ineligibility finding continues to result in collateral consequences with respect to the duration of his parole and probation. Thus, we cannot find this action moot.

First, Townes still asserts an injury-in-fact. Although his release from prison has foreclosed the possibility of a shorter period of incarceration, the parole ineligibility finding still may affect the length of his parole. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (describing collateral consequences). Therefore, because Townes could receive a shorter period of

parole if he receives a discretionary parole hearing, he has properly asserted an injury-in-fact. *See Mujahid v. Daniels*, 413 F.3d 991, 994-95 (9th Cir. 2005).[1]

Second, Townes continues to satisfy the causation prong of the standing requirement. Article III requires "a 'causal connection between the injury and the conduct complained of,' meaning that the injury is 'fairly traceable' to the defendant's actions." *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 428 (4th Cir. 2007) (*quoting Lujan*, 504 U.S. at 560). Here, the Board's parole ineligibility finding precludes Townes from an opportunity to obtain a shortened period of parole.

Finally, Townes has alleged an injury that still satisfies the redressability prong. "[F]or an injury to meet the redressability standard, 'it must be *likely*, as opposed to *merely speculative*, that the injury will be redressed by a favorable decision.'" *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216-17 (4th Cir. 2008) (*quoting Lujan*, 504 U.S. at 561). In some cases, like the one at hand, a plaintiff will seek *immediate* relief from a federal court as a necessary antecedent to the *ultimate* relief he seeks from a different entity, like an administrative agency. In these situations, to meet the redressability prong, a party must demonstrate that a favorable decision from the federal court likely would provide him immediate relief, but need not demonstrate that it likely would provide

---

[1]Contrary to the dissent's suggestion, although Townes's release from prison has altered the ultimate relief he hopes the *Board* will grant (a shortened term of parole as opposed to a shortened sentence), the relief he seeks from the *federal courts* has remained constant. That is, Townes still requests a judgment that the Board's parole-ineligibility finding violated his constitutional rights and an order directing the Board to rescind this finding. Moreover, also contrary to the dissent's suggestion, Townes need not again seek relief from the Board, which has already adjudicated Townes as statutorily ineligible for parole. The law does not require such a futile act. *Cf. Lynce v. Mathis*, 519 U.S. 433, 436-37 n.4 (1997); *Tesoro Refining & Mktg. Co. v. FERC*, 552 F.3d 868, 873-74 (D.C. Cir. 2009).

him the ultimate, discretionary relief sought from the agency. *See FEC v. Akins*, 524 U.S. 11, 25 (1998).

In *Akins*, the Supreme Court specifically addressed this very issue. There the FEC contended that plaintiffs lacked standing because even if the agency "agreed with [the plaintiffs'] view of the law," it was "possible" that the FEC could "still have decided in the exercise of its discretion" not to grant them relief. *Id.* According to the FEC, plaintiffs had failed to show that their alleged harm was (1) fairly traceable to the FEC's decision and (2) redressable by judicial action. The Supreme Court flatly rejected this argument, explaining that it could not "*know* that the FEC would have exercised its . . . discretion" to deny plaintiffs relief. *Id.* (emphasis added). The Court further explained:

> Agencies often have discretion about whether or not to take a particular action. Yet those adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon an improper legal ground. *If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action . . . even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result for a different reason.* Thus [plaintiffs'] "injury in fact" is "fairly traceable" to the FEC's decision . . . , even though the FEC might reach the same result exercising its discretionary powers lawfully. *For similar reasons, the courts in this case can "redress" [plaintiffs'] "injury in fact."*

*Id.* (emphasis added; citations omitted). Thus, the Court in *Akins* held that a plaintiff could establish redressability simply by demonstrating that an agency "misinterpreted the law," even though the agency might ultimately "reach the same result." The Court recognized that, in this situation, a plaintiff can establish redressability without demonstrating that the

agency would likely grant the ultimate relief sought; to require a showing of likelihood of ultimate relief in this situation would involve courts in the speculative (if not impossible) task of predicting how an agency will exercise its discretion.

Of course, *Akins* also indicates that if a court "know[s]" that an agency will not grant the ultimate relief the plaintiff seeks, the plaintiff lacks standing. *Id.* Or, put another way, if "no realistic possibility" exists that a plaintiff can obtain the ultimate relief, he will fail to satisfy the redressability prong. *See Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 56 (D.C. Cir. 1991); *Ranger Cellular v. FCC*, 348 F.3d 1044, 1048-50 (D.C. Cir. 2003).

The Supreme Court has applied this same standing analysis to cases in which plaintiffs challenge government racial set-aside policies. Such plaintiffs need not show a likelihood that they would gain the *ultimate* relief sought. Rather, they need only show that they are "able and ready" to seek the opportunity and "that a discriminatory policy prevents [them] from doing so on an equal basis." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *see also W.H. Scott Constr. Co. v. City of Jackson*, 199 F.3d 206, 212-15 (5th Cir. 1999); *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 403-06 (6th Cir. 1999).[2]

---

[2]Contrary to the dissent's claim, Townes is "able and ready" to obtain the ultimate relief he seeks—a shortened period of parole. Moreover, our standing holding is not an "advisory opinion" but simply a straightforward application of *Akins* and the racial preference cases. Indeed, Townes' claim mirrors those of the plaintiffs in the racial preference cases. Like them, he alleges that "a discriminatory policy" (the Board's allegedly discriminatory parole ineligibility determination) "prevents" him from seeking something (a shortened period of parole) "on an equal basis" with other persons. *Northeastern Florida*, 508 U.S. at 666. Thus, as one of our sister circuits has recently held, the standing framework set forth in the racial preference cases applies in the present context. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1101-03 (D.C. Cir. 2005) (applying *Northeastern Florida* to a parole regulation to find that "[a] decision from this court finding the regulation unlawful and requiring a new parole hearing with representation would redress [plaintiff's] injury").

The immediate relief sought by Townes is a judgment that the state's parole-ineligibility determination was unconstitutional, necessitating a remand to the district court to order the Parole Board to rescind that determination. We have previously granted similar relief. *See Fender v. Thompson*, 883 F.2d 303, 307-08 (4th Cir. 1989) (remanding to the district court for entry of an order directing the Virginia Department of Corrections to rescind its parole ineligibility determination). Therefore, if Townes prevails on the merits before us, he likely will obtain the *immediate* relief he seeks.

Of course, Townes hopes that this immediate relief will result in a hearing before the Board and a reduction in the length of his parole. The Warden's contention that "[u]nder Virginia law, the Virginia Parole Board has absolute discretion in matters of parole," Supp. Br. of Appellees at 9, belies any suggestion that the Board lacks power to provide Townes relief. Given the wide discretion the Board enjoys, *see Vann v. Angelone*, 73 F.3d 519, 523 (4th Cir. 1996), we do not "know" it would refuse to exercise its discretion to shorten Townes's period of parole. *Akins*, 524 U.S. at 25. Like the Supreme Court in *Akins*, we refuse to speculate as to how an independent agency would exercise its discretion. *See id.* Thus, Townes has set forth facts sufficient to demonstrate that his claims are not moot, and we accordingly turn to the merits of his appeal.[3]

---

[3]Our friend in dissent attempts to find support for his position in a number of cases holding a claim moot because the plaintiff failed to allege that the challenged act resulted in continuing collateral consequences. *See Spencer*, 523 U.S. at 14-16 (parole revocation does not have collateral consequences that survive prisoner's release); *Hardy*, 545 F.3d at 283-85 (prisoner completed term of supervised release); *Incumaa v. Ozmint*, 507 F.3d 281, 286-89 (4th Cir. 2007) (prisoner no longer subject to challenged condition of confinement); *Taylor v. Rogers*, 781 F.2d 1047, 1051 (4th Cir. 1986) (same); *Inmates v. Owens*, 561 F.2d 560, 561-63 (4th Cir. 1977) (same). These cases are inapposite because Townes clearly *does* allege continuing collateral consequences: he claims that the parole-ineligibility finding improperly extends his period of parole and probation.

## III.

Townes contends that the Supreme Court of Virginia's rejection of both his equal protection and due process claims provide a basis for habeas relief in this court.[4] We can grant habeas relief only when an underlying state-court adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2) (2006); *see also Williams v. Taylor*, 529 U.S.

---

The dissent also seeks to rely on *United States v. Johnson*, 529 U.S. 53, 58-60 (2000), which simply held that, under federal law, an error in a prisoner's release date does not automatically shorten the duration of that prisoner's term of supervised release. Mootness, however, was not at issue in *Johnson*. The dissent relies on one circuit's holding that *Johnson* renders such attacks on supervised release moot. *See Burkey v. Marberry*, 556 F.3d 142, 148-51 (3d Cir. 2009). Not only does *Burkey* constitute out-of-circuit precedent interpreting the very different federal supervised release scheme, but it also represents a minority interpretation of *Johnson*. Two other circuits have held *Johnson* does not render such claims moot. *See Levine v. Apker*, 455 F.3d 71, 76-77 (2d Cir. 2006); *Mujahid*, 413 F.3d at 993-95. We need not enter this fray because *Johnson* has no bearing on how the Virginia Parole Board chooses to exercise its "absolute" discretion over parole. *See Garrett v. Commonwealth*, 415 S.E.2d 245, 247 (Va. Ct. App. 1992).

[4]We note that after Townes filed his complaint but prior to the filing of appellate briefs in this case, the Supreme Court held that 42 U.S.C. § 1983 (2000) provides *a* proper vehicle for challenges to state parole ineligibility determinations. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). It is not entirely clear whether a habeas petition under 28 U.S.C. § 2254 (2006) may also provide an avenue for such a challenge. *See Benchoff v. Colleran*, 404 F.3d 812, 815 n.4 (3d Cir. 2005) (noting lack of clarity and citing cases); *Wilkinson*, 544 U.S. at 86-87 (Scalia, J., concurring). However, *Wilkinson* does not expressly foreclose the use of § 2254 to bring such a challenge. Moreover, neither the state nor Townes's appointed counsel has suggested to us in briefs or at oral argument that a habeas petition is an improper vehicle for Townes' claim. Nor has any party ever urged that we construe the complaint as having been brought under § 1983 rather than § 2254. Accordingly, we treat Townes's claims as titled by him—the basis for habeas relief pursuant to § 2254.

362, 412-13 (2000). Townes expressly acknowledges the applicability of this rigorous standard of review. *See* Brief of Appellant at 9. With it in mind, we examine first his due process claim and then his equal protection claim.

A.

Townes alleges that the Board denied him due process rights when it found him ineligible for parole under the Virginia three-strikes parole ineligibility statute, Va. Code Ann. § 53.1-151(B1) (2005). He contends that this provision applies only if the state has proven that a person has committed three *armed* robberies, and he asserts that only two of his convictions meet this requirement. Townes concedes that the state convicted him of firearm offenses in connection with two of his robbery convictions. But he argues that because the state did not convict him of a firearm offense in connection with the third robbery, the Board erred in holding that that third crime counted as an armed robbery for purposes of the three-strikes statute.

Townes has not identified any clearly established *federal* law that prohibits the Board from considering conduct unnecessary to a conviction as part of its three-strikes determination. Nor has he demonstrated that the state unreasonably determined any facts in applying the governing legal principles to his case. This claim cannot, therefore, provide a basis for habeas relief. *See Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (Kennedy, J., plurality op.).

B.

Townes, an African American, also maintains that the Board violated his equal protection rights by discriminating against him because of his race. Specifically, he alleges that the Board violated these rights by declining to provide him the benefit of the "common act" exception to the three-strikes

parole eligibility statute, when it did provide such a benefit to a Caucasian woman.

Townes contends that the "district court failed . . . to properly apply the [12(b)(6)] standard of review" in rejecting his equal protection claim. Brief of Appellant at 29, 30; *see also id.* at 31-35; Reply Brief at 16-19. When "assessing whether a § 2254 claim has been 'properly dismissed without an evidentiary hearing or discovery,'" a court "must evaluate its underlying allegations pursuant to the principles of Federal Rule of Civil Procedure 12(b)(6)." *Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009) (*quoting Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006)). Therefore, a court must accept as true a habeas petition's well-pleaded allegations (but not its "legal conclusions," *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). Of course, when a state court has adjudicated a habeas claim on the merits (Townes concedes that, under controlling circuit precedent, the state court adjudicated his claim on the merits, Brief of Appellant at 9 n.3), the petitioner must allege facts sufficient to meet the exacting standard set forth in 28 U.S.C. § 2254(d) (2006). *See Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000). Townes maintains that the allegations in his complaint, when taken as true, establish the Supreme Court of Virgina's decision as "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).[5] For the following reasons this argument fails.

The Virginia three-strikes statute is race neutral. *See* Va. Code Ann. § 53.1-151(B1) (2005). Therefore, to succeed on any equal protection challenge to it, a litigant must allege facts demonstrating "[1] that he has been treated differently

---

[5]Townes also briefly asserts that the Supreme Court of Virginia's rejection of his equal protection claim "was contrary to and an objectively unreasonable application" of clearly established federal law. Brief of Appellant at 29. But he never offers any rationale for this assertion and we see none.

from others with whom he is similarly situated *and* [2] that the unequal treatment was the result of intentional or purposeful discrimination," i.e., in this case, discrimination on the basis of race. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (emphasis added).

Relying only on a single newspaper article, Townes alleges that he is similarly situated to Sue Kennon, reportedly a white, "upper middle-class housewife," who committed four robberies with a broken toy pistol over the course of eight days. *See* Bill Baskervill, *Convicted Bank Robber Finds Unlikely Allies*, Richmond Times Dispatch, July 28, 2003, at B5. According to the newspaper article, the Board ruled that Kennon's four crimes in eight days constituted "a single criminal act," exempting her from the three-strikes statute. *Id.* Kennon thus became eligible for discretionary parole, which the Board granted. *Id.*

Clearly, in some respects Townes's and Kennon's crimes differ. Kennon committed four robberies in eight days with the same toy pistol while Townes, accompanied by various accomplices, committed three robberies in ten days with different real guns. Just as clearly, however, in some respects their crimes are similar. Both robbed a series of retail establishments. Both completed these robberies in less than two weeks. And both displayed a weapon during the robberies. But even assuming Townes alleged, and the state court unreasonably rejected, facts sufficient to satisfy the first element of an equal protection claim—unequal treatment of similarly situated persons[6]—he has failed to allege facts sufficient to sat-

---

[6]The district court suggested that "[i]n light of the myriad of factors involved in a parole decision, '[i]t is difficult to believe that any two prisoners could *ever* be considered 'similarly situated' for the purpose of judicial review of an equal protection claim.'" *Townes v. Jarvis*, No. 1:04cv582 (E.D. Va. Aug. 22, 2005) (emphasis added) (*quoting Reffitt v. Nixon*, 917 F. Supp. 409, 414 (E.D. Va. 1996)). This analysis seems somewhat inapposite to the case at hand because Townes does not challenge the

isfy the second element of such a claim—intentional discrimination.

To satisfy this second element in a habeas petition, Townes must provide allegations sufficient to hold that the state court unreasonably determined the facts against him when it rejected his claim that the Board *intentionally* or *purposefully* discriminated against him on the basis of race. This is so because "[t]o prove that a statute has been administered or enforced discriminatorily," and so violates equal protection rights, a plaintiff must show "*more* . . . than the fact that a benefit was denied to one person while conferred on another." *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 819 (4th Cir. 1995) (emphasis added). He must also allege that the state intended to discriminate against him. *Id.* Townes alleges *no* facts that, if proved, would demonstrate that the Board *intentionally* discriminated against him. *See Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006). *A fortiori*, Townes has failed to allege a basis for us to hold that the state court unreasonably determined his claim to be frivolous.

Of course, Townes alleges that "[i]n a similar case, (Sue Kennon), a white upper-middle-class woman in similar circumstances and facts was given consideration not given to this black male." But his *sole* allegation as to the Board's *motive* is:

---

Board's ultimate decision to deny him parole based on any of a "myriad of factors." Rather he challenges the Board's refusal to provide him the benefit of the exception to the three-strikes statute, which rendered him *ineligible* for parole consideration. The three-strikes statute provides that this inquiry turns only on whether a person's crimes constitute "a common act, transaction or scheme." Va. Code Ann. § 53.1-151(B1) (2005). Two persons with *identical* criminal histories who committed identical crimes (perhaps co-conspirators) would surely be "similarly situated" for purposes of determining parole *eligibility*.

> The arbitrary and [capricious] refusal of the Board to grant Petitioner the same form of consideration can be seen as deliberate discrimination: Ms. Kennon's crimes have received different treatment from Petitioner's crimes. Petitioner was a 16 year old, black male from the projects in Richmond while Ms. Kennon is a white, middle-class female.

Thus, Townes only alleges that his case "*can be seen as* deliberate discrimination" (emphasis added). Not only does he never allege that the Board actually did intentionally discriminate against him, but more significantly, Townes never alleges any of the factors that "have been recognized as probative of whether a decisionmaking body was motivated by a discriminatory intent." *Sylvia Dev. Corp.*, 48 F.3d at 819. For example, Townes does not allege a "consistent pattern" of intentional discrimination by the Parole Board, a "history of discrimination" by the Board, a "specific sequence of events" leading up to the Board's ineligibility finding, or "contemporary statements by decisionmakers" evidencing intentional discrimination by the Board. *Id.* In sum, Townes sets forth *no facts*—indeed no allegations—supporting the contention that the Board intentionally discriminated against him because of his race, let alone that the state court acted unreasonably in rejecting this claim.

Accordingly, the district court did not err in dismissing Townes's equal protection claim.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

SHEDD, Circuit Judge, dissenting:

Carl Melvin Townes commenced this habeas action in 2004 while he was a prisoner confined in a Virginia correctional

center. In his petition, Townes argued that the state erred by classifying him as ineligible for discretionary parole, and he asked for an order directing the Virginia Parole Board (the "Board") to grant him parole. However, after the district court dismissed his petition on the merits as frivolous, the Board paroled Townes pursuant to Virginia's mandatory parole law. While the majority concludes that Townes' mandatory parole does not render his appeal moot, I conclude that it does because his claims no longer satisfy Article III's redressability requirement.

In essence, what Townes wants and what the majority provides is an advisory opinion. Townes does not argue that we can provide him with any relief that would directly remedy his alleged injury. Rather, he asserts that he would use an opinion from us stating that the Board erred in its parole eligibility determination to help him persuade the Board to exercise its discretion and shorten his current term of parole, thereby obtaining a remedy for his injury. However, the Board's decision to terminate a period of parole is guided by discretionary considerations that are wholly distinct from the factors that guided its decision to classify Townes as ineligible for discretionary parole from his earlier incarceration. Therefore, there is nothing in this record to support the conclusion that the Board would be likely to remedy Townes' injury by shortening his parole if we issued a decision in his favor — a conclusion that we must reach before we can exercise jurisdiction over the merits of his appeal. Accordingly, I dissent.

I

While Townes was incarcerated for robbing three different restaurants, the Virginia Department of Corrections (the "VDOC") determined he was ineligible for consideration for discretionary parole because he had three qualifying convictions within the meaning of Virginia's three-strikes law. *See* Va. Code Ann. § 53.1-151(B1). Townes appealed that deter-

mination to the Board, which affirmed the VDOC's decision. Townes then challenged the Board's decision by filing a petition for writ of habeas corpus with the Virginia Supreme Court, but that court dismissed his petition as frivolous in November 2003.

Townes then commenced this habeas action in 2004, challenging the Virginia Supreme Court's decision. After the district court dismissed his petition as frivolous, we granted Townes a certificate of appealability. Before we decided his appeal, however, the Board paroled Townes pursuant to Virginia's mandatory parole law. *See* Va. Code Ann. § 53.1-159.[1] In light of his release from prison, we ordered the parties to file supplemental briefs on mootness. In his supplemental brief, Townes argues that his appeal still satisfies Article III requirements because (1) he continues to suffer collateral consequences or an injury-in-fact in the form of certain restrictions on his freedom that are associated with his current term of parole,[2] and (2) his injury is redressable because there is a "*possibility*" that the Board would exercise its discretion and shorten his parole if we issued an opinion stating that the Board erred in its earlier parole eligibility determination. *See* Supplemental Brief of Appellant at 2-3, 8-9 (emphasis added).

## II

As the majority recognizes, we must resolve the threshold jurisdictional question of whether Townes' release from prison moots his challenge to the Board's parole eligibility determination. In answering this question, we need not resolve any novel issues of law. We have consistently held that a prisoner's transfer or release from prison moots his

---

[1]According to a stipulation submitted by the parties, Townes is currently serving a term of parole and a separate term of probation.

[2]Under the terms of his parole, Townes must *inter alia* maintain regular employment, permit the Parole Officer to visit his home, and follow the Parole Officer's instructions.

challenge to a determination that affected his confinement, including a determination that, according to the plaintiff, unlawfully deprived him of consideration for parole. *See, e.g.*, *Taylor v. Rogers*, 781 F.2d 1047, 1049, 1051 (4th Cir. 1986). Applying this well-established precedent here, I conclude that Townes' appeal is moot.

### A.

The mootness doctrine is a limit on our jurisdiction that "originate[s] in Article III's 'case' or 'controversy' language." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Generally speaking, mootness can be described as "the doctrine of standing set in a time frame," *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quotation marks omitted), and it recognizes that under Article III the plaintiff normally bears the burden of establishing throughout all stages of litigation (1) that he is suffering an injury-in-fact or continuing collateral consequence,[3] (2) that his injury is fairly traceable to the challenged action or decision, and (3) that a favorable decision *would be likely* to redress his injury. *Spencer*, 523 U.S. at 7, 10-14; *Hardy*, 545 F.3d at 283-84.

### B.

Mindful of these Article III requirements, we have recognized that "[m]ootness questions often arise in cases involving inmate challenges to prison policies or conditions," and we have consistently held "that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or con-

---

[3]When a plaintiff like Townes has been released from prison during the pendency of an action, the Supreme Court has used the concept of continuing "collateral consequences" as an alternative to the injury-in-fact requirement. *See Spencer v. Kemna*, 523 U.S. 1, 7-8, 14 (1998); *see also United States v. Hardy*, 545 F.3d 280, 283-84 & n.2 (4th Cir. 2008).

dition moots his claims." *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007); *see also Hardy*, 545 F.3d at 283-85; *Taylor*, 781 F.2d at 1049, 1051 (dismissing claim that plaintiffs were unlawfully denied consideration for parole as moot); *Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977). The reasons for finding mootness in such a context are clear:

> Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and *would not redress* in any way the injury he originally asserted. And the newly situated inmate has no further need for such declaratory or injunctive relief, *for he is free of the policy or practice that provoked his lawsuit in the first place*.

*Incumaa*, 507 F.3d at 287 (emphasis added).

I conclude that these precedents control our analysis and render the claims Townes presented in his habeas petition and in his opening brief on appeal moot. As indicated above, Townes originally asserted that the Board erred by classifying him as ineligible for discretionary parole and thus keeping him incarcerated. However, in light of his release from prison, Townes is no longer ineligible for parole because of the determination he challenged in his habeas petition. Indeed, he has already obtained the relief he sought in his petition — release from incarceration — because he is now on parole and is no longer in prison. Thus, any relief ordered in his favor "would not redress in any way the injury he originally asserted," and he "has no further need for . . . relief, for he is free of the policy or practice that provoked his lawsuit in the first place." *Id.*; *see also Taylor*, 781 F.2d at 1048-49, 1051. Therefore, his claims are moot.[4]

---

[4]Our precedents in this area of law are in accord with cases from other circuits that apply the mootness doctrine and dismiss habeas cases like this one when an inmate challenges his parole eligibility and is then paroled

In attempting to distinguish our precedents in this area of law, the majority suggests that they are inapposite because they all involved actions that were dismissed as moot "because the plaintiff failed to allege that the challenged act resulted in *continuing collateral consequences*." *Maj. Op.*, at 8 n.3 (emphasis added). Contrary to the majority's suggestion, however, our opinions in *Incumaa*, *Taylor*, and *Inmates* did not dismiss the plaintiffs' actions as moot for failure to allege continuing collateral consequences. In *Incumaa*, for example, it is apparent that we dismissed that action as moot in part because of our inability to "redress" the plaintiffs' claimed injuries — not because of the plaintiffs' failure to allege continuing collateral consequences or an injury-in-fact. *Incumaa*, 507 F.3d at 283, 286-87 ("conclud[ing] that Incumaa no longer stands to benefit from the declaratory and injunctive relief he seeks" and noting that any "relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not *redress* in any way the injury he originally asserted" (emphasis added)).

Moreover, to the extent the majority is suggesting that I would dismiss Townes' action as moot for failure to allege collateral consequences, *see Maj. Op.*, at 8-9 n. 3, this is simply not correct. As indicated above, I conclude that Townes' appeal is moot because a decision in his favor would not be likely to redress his alleged injury and therefore would fail to satisfy this separate and independent Article III requirement. I express no opinion on whether he has proved collateral consequences or satisfied the other Article III requirements.

---

while his case is on appeal. *See, e.g.*, *Burkey v. Marberry*, 556 F.3d 142, 146-51 (3d Cir. 2009); *Fendler v. U.S. Bureau of Prisons*, 846 F.2d 550, 555 (9th Cir. 1988); *Vandenberg v. Rodgers*, 801 F.2d 377, 378 (10th Cir. 1986); *Graham v. U.S. Parole Comm'n*, 732 F.2d 849, 850 (11th Cir. 1984); *Granville v. United States*, 613 F.2d 125, 126 (5th Cir. 1980); *Brady v. U.S. Parole Comm'n*, 600 F.2d 234, 236 (9th Cir. 1979).

## C.

Perhaps because Townes recognizes that *Incumaa* and our other precedents render his original claim moot, he presents a new argument in his supplemental brief.[5] There, he argues that his appeal continues to satisfy the Article III redressability requirement — notwithstanding his release from prison — because, if we hold that the Board erred by classifying him as ineligible for discretionary parole, it is "*possib[le]*" that the Board will redress his alleged injury by exercising its discretion and shortening his current term of parole. *See* Supplemental Brief of Appellant at 8-9 (emphasis added).

## 1.

As previously stated, the Article III limits on our jurisdiction include a requirement that the plaintiff's injury be redressable, and it has long been settled that the normal standard for measuring whether an injury is redressable is whether a decision in the plaintiff's favor *would be likely* to remedy his injury. *See, e.g.*, *Spencer*, 523 U.S. at 7. Here, Townes does not argue that a decision in his favor would be "likely" to remedy his injury. In fact, Townes does not argue that a decision in his favor would in any way directly remedy his injury. *See* Supplemental Brief of Appellant at 8-9. Instead, Townes contends that he only needs to show that there is a "possibility" that a decision in his favor would redress his injury, and he asserts that he has made this showing because

---

[5]*Compare* Brief of Appellant at 12-35 (arguing that Townes should be classified as eligible for parole), *with* Supplemental Brief of Appellant at 1-9 (arguing that Townes should be given a shorter period of parole). While the majority asserts that "the relief [Townes] seeks from the *federal courts* has remained constant," *Maj. Op.*, at 5 n.1, this assertion is incorrect. In his federal habeas petition, Townes asked the court to provide three specific forms of relief, including an order directing the Board to parole Townes. Given that the Board has already paroled Townes, he is no longer seeking this form of relief and therefore the relief he is seeking from the federal courts has not remained constant.

the Board might shorten his current term of parole if we issue a decision in his favor. *Id.*

In essentially agreeing with this argument, the majority concludes that Townes does not need to show that his asserted injury is likely to be redressed by a favorable decision from this Court. This is so, the majority states, because this case falls within a special category of cases where the plaintiff needs relief from a federal appeals court as a "necessary antecedent" to obtaining the ultimate relief he wants. *Maj. Op.*, at 5, 7. However, this is not one of those cases. As Townes acknowledged during oral argument, he does not need any merits-based relief from us to obtain a remedy for his injury. Indeed, Townes currently is (and has been) capable of asking the Board to shorten his parole, and the Board currently possesses authority to grant him this relief. *See, e.g.*, Va. Code Ann. § 53.1-136.[6] Accordingly, any asserted restriction on Townes' freedom can currently be adjusted through existing state legal and administrative processes regardless of whether he obtains favorable merits-based relief from us.[7]

The majority also states that the redressability analysis applied by the Supreme Court in racial set-aside cases supports its position because in those cases the plaintiff does not need to show that he is likely to obtain the ultimate relief he wants. *See Maj. Op.*, at 6-7. Contrary to the majority's suggestion, however, the Supreme Court's racial set-aside cases do not eliminate the requirement that a favorable decision be likely to remedy the plaintiff's injury. *See, e.g.*, *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663-64, 666 (1993).

---

[6]Further, Virginia law authorizes a state court to shorten his term of probation. *See, e.g.*, Va. Code Ann. § 19.2-304.

[7]Townes may understandably want an advisory opinion which he believes would assist him in obtaining the ultimate relief he wants, but that would be true of any number of litigants in federal court, and we simply are not empowered to issue such opinions.

Moreover, the majority's reliance on set-aside cases is inapposite because in those case, as the majority recognizes, the plaintiff must include a showing that he is "able and ready" to seek the ultimate benefit he wants, *Maj. Op.*, at 7, and Townes cannot make this showing. He is not "able and ready" to obtain the ultimate relief he sought in his habeas petition — which was an order declaring him eligible for discretionary parole and the shortening of his term of incarceration — because he is no longer incarcerated and is now on parole. Therefore, the redressability analysis that applies in set-aside cases does not apply here.[8]

The majority also asserts that *FEC v. Akins*, 524 U.S. 11 (1998), supports its new approach to redressability, stating that the *Akins* "Court recognized that . . . a plaintiff can establish redressability without demonstrating that the agency would likely grant the ultimate relief sought." *Maj. Op.*, at 6-7. However, *Akins* did not state that a plaintiff can establish redressability without showing that the agency would likely grant the ultimate relief sought. Rather, when discussing an entirely different Article III requirement — causation — the *Akins* Court stated that the plaintiff's injury was fairly traceable to the agency's determination even though the agency might reach the same decision on remand. *Akins*, 524 U.S. at 25.

In addition, the majority's reliance on *Fender v. Thompson*, 883 F.2d 303 (4th Cir. 1989), does not support the exercise of jurisdiction in this case because, unlike Townes, the petitioner

---

[8]The majority cites *Settles v. U.S. Parole Com'n*, 429 F.3d 1098 (D.C. Cir. 2005), in support of its assertion that the jurisdictional framework set forth in racial set-aside cases applies in Townes' case and supports finding that this action is still live. *Maj. Op.*, at 7 n.2. However, the mootness analysis that the D.C. Circuit applied in *Settles* is entirely different than the analysis that applies here. In *Settles*, the D.C. Circuit determined that the action was "not moot because Settles has not yet been released" from prison. *Settles*, 429 F.3d at 1101. It is precisely because Townes has been released from prison that his appeal is now moot.

in *Fender* was still in prison when we decided that appeal. Thus, *Fender* provides no basis for exercising jurisdiction over an appeal when the petitioner has been paroled.

2.

Viewing Townes' new argument under the proper redressability standard makes it clear that his claims are moot. Townes has not established (and it is not at all apparent to me) that a decision in his favor (*i.e.* one stating that the Board erred in classifying him as ineligible for parole) would be likely to result in the Board exercising its discretion and shortening his current period of parole.

When the Board classified Townes as ineligible for parole, it made that determination based on its application of Virginia's discretionary parole eligibility statute, which provides that a person shall not be eligible for parole if he has three qualifying convictions. *See* Va. Code Ann. § 53.1-151. In contrast, when determining whether to shorten Townes' parole, the Board must apply its own regulations and weigh entirely different considerations, including the best interests of society.[9] In other words, while the body that determined Townes' eligibility for discretionary parole is the same as the one vested with authority to shorten his current term of parole, the Board's determination in each instance is based on entirely different considerations, and there is simply nothing in the record to support the conclusion that the Board would likely shorten Townes parole if we issued a decision stating that it erred in interpreting and applying Virginia's discretionary parole eligibility statute to Townes. Indeed, there is not

---

[9]The Board has adopted rules and procedures governing the parole process. *See* Virginia Parole Board Policy Manual (Oct. 2006). As relevant here, the Board's guidelines provide that "[t]he Board may terminate active parole supervision pending completion of the parole period at any time upon a finding that such termination would be in the best interest of society and the parolee." *Id.* at 24-25.

even any evidence that the Board would consider the propriety *vel non* of its parole eligibility determination when determining whether to shorten Townes' parole.[10]

In short, determining whether Townes' injury is likely to be redressed depends upon choices that would be made by the Board — an independent actor not before the Court whose exercise of legitimate discretion we cannot presume to control or predict. Indeed, my view is consistent with *ASARCO, Inc. v. Kadish*, 490 U.S. 605 (1989), where a plurality of justices determined that a party failed to satisfy Article III's redressability requirement. There, the plurality stated that "[w]hether the association's claims of economic injury would be redressed by a favorable decision in this case depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* at 614.[11]

---

[10]In determining whether the Board would be likely to reduce Townes' parole if we decided that it erroneously denied him consideration for discretionary parole and thereby possibly extended his period of active incarceration, the Supreme Court's opinion in *United States v. Johnson*, 529 U.S. 53 (2000), is instructive. There, the Court rejected the concept of interchangeability of supervised release and incarceration, holding that a supervised release term begins to run on the day the prisoner is released from prison — not the date on which he lawfully should have been released — because "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration," and "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release." *Johnson*, 529 U.S. at 59. This is also apparently true under Virginia law. *See* Virginia Parole Board Policy Manual, at 1. Contrary to the majority's suggestion, *see Maj. Op.*, at 8-9 n.3, I discuss *Johnson*, not to establish mootness, but, to illustrate one reason why I believe Townes has not shown that the Board would be likely to shorten his parole if we issued a decision stating that he was erroneously classified as ineligible for discretionary parole.

[11]This is not to say that the Board's decision to classify Townes as ineligible for parole is necessarily insulated from review. It may be that a court would have jurisdiction to review the Board's determination if Townes

## III

For the foregoing reasons, I dissent. I would dismiss Townes' appeal as moot and not address the merits of his claims.

---

brought an action for damages, for example a claim under 42 U.S.C. § 1983. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248-49 (4th Cir. 2005) (holding that former detainee's request for injunctive relief is moot, but his "request for monetary relief is not moot even though [he] has been released from Jail"). Here, however, Townes filed a habeas action, not a claim for damages.